HITCHINS BROS. *vs.* THE MAYOR AND COUNCILMEN
OF FROSTBURG.

*Municipal Corporations—Discretionary powers—Liability
for Negligence—Construction of Sewers—Overflow of Sur-
face water—Notice—Nuisance—Practice in Actions at
Law—Instructions to the Jury—Reading the Declaration
to the Jury—Appeal.*

Where a municipal corporation is invested by its charter with power
to open, grade, and pave streets, and to construct such gutters and
sewers as in its judgment the public convenience may require, and
to repair the same whenever needed, such power is discretionary,
and the municipal authorities cannot be compelled thereunder to
open, widen or extend streets, or adopt a particular grade, or
any particular plan of improvement, unless the terms of the statute
are imperative.

But any particular plan that may be adopted must be a reasonable one,
and its manner of execution thence becomes, with reference to the
rights of the citizen, a mere ministerial duty; and for any neg-
ligence or unskilfulness in the execution or construction of the
work, whereby injury is inflicted upon private right, the municipality
will be held responsible.

There is a municipal liability where the property of private persons
is flooded by surface water, either directly or by the water being
set back, when this is the result of the negligent execution of the
plan adopted for the construction of gutters, drains, culverts, or
sewers, or of the negligent failure to keep the same in repair and
free from obstruction, and this, whether the lots are below the grade
of the streets or not.

In an action against a municipal corporation for damages to the plain-
tiffs' property resulting from the defective and insufficient condition
of a sewer constructed for the purpose of receiving and carrying
off surface water, it is necessary, to maintain the action, that the
jury should find that the defendant had notice, either direct or
inferential by lapse of time, of such defective and insufficient con-
dition of the sewer and the injury resulting therefrom.

Hitchins Bros. *vs.* Mayor, &c., of Frostburg.

Where a municipal corporation has caused the natural flow of surface water to be interrupted by the elevation of the grade of a street, and the water has been concentrated in a gutter and made to flow to the mouth of a sewer, it is a duty incumbent upon the corporation to provide by adequate means for passing off the water there concentrated in volume, so as to avoid doing damage to private property.

If the surface water be allowed to accumulate in large quantities at the mouth of the sewer, and thence flow back upon private property, this constitutes a nuisance, and, as such, it is the duty of the corporation to remove it, and for the neglect of such duty it is liable to the private owner.

In an action against a municipal corporation to recover damages to the plaintiffs' property caused by the overflow of surface water, it was Held:

That if the injury complained of was sustained by reason of the backing of the water from the mouth of a sewer or culvert constructed by the defendant, where it had been brought in large quantities by artificial drains, and such backing and overflow were caused by the defective and insufficient sewer or culvert, and would not have occurred but for that cause, the fact that the prior owner of the plaintiffs' property cut down and lowered the floor of the cellar of the house, and removed the earth between the house and the street, so that, when the water was raised a few inches in the gutter on the street, it ran into the cellar or basement of the house, afforded no justification to the defendant for the defective and insufficient sewer.

Where the instruction given for the guidance of the jury makes no reference to the pleadings in the case, the jury are not required to look at the pleadings, to ascertain how they are to find; and the plaintiffs' counsel will not be permitted to read the declaration to the jury and argue that its allegations are sustained by the evidence in the case.

Whether the jury should take with them to their room the pleadings in any case, is matter of discretion of the Court below, and not the subject of review on appeal.

Appeal from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiffs offered the following prayer, which the Court (HOFFMAN and SYESTER, J.,) rejected:

That if the jury find from the evidence that the defendant built the culvert or underground sewer spoken of by the witnesses, leading from a point on Bowery street opposite Charles street, diagonally across said Bowery street, and emptying on the south side thereof, and that said culvert or sewer was intended to receive and carry off the surface water flowing through said Bowery and Charles streets in times of rain; and if they further find that said sewer was constructed in such careless, unskilful and improper manner, as instead of carrying off such water, to cause the same to accumulate in large quantities at the upper end thereof, and from thence to flow back upon the property of the plaintiffs, and injure and damage the same, then the plaintiffs are entitled to recover in this action.

The defendant offered six prayers, the first and fourth of which as follows, were granted, the others were rejected and are omitted:

1. That Frostburg is an incorporated town under the charter offered in evidence, and that if the jury find from the evidence that the plaintiffs' premises abut on Bowery street in said town on the upper side thereof, and that the defendant, under its charter, properly raised the grade of said street above the natural level of the ground, and constructed a culvert thereunder to carry off surface water flowing from the hillsides on the upper side of said street, under the powers in said charter; and if they further find that the natural formation of the land above and near and around the plaintiffs' premises, is such that surface water in times of rain flows down and upon their premises and over same and adjoining land to said street, and in time of heavy rains is backed up on their premises and into the basement of their house, then their verdict must be for the defendant, notwithstanding the jury may further find that the said change

of grade and elevation of said street caused such back flow of water, and that said culvert is insufficient in size to carry off all of such water in times of heavy rain; provided the construction of the culvert did not place or leave the said property in a worse condition than if no culvert had been made at all.

4. That if the jury find that after the house mentioned in evidence was built, and after Bowery street was graded, and the culvert thereunder constructed, the cellar or basement under the house and ground in front of it was dug down or excavated to a depth of two feet or more lower than it had been before, and a door cut therein in such a manner that surface water would run into said basement or cellar whenever the natural flow of the same was obstructed by the grade of said Bowery street, by reason of the insufficient size of said culvert to carry off said surface water after unusually heavy rains, (if the jury so find,) and that said water did not so run into said house before said digging down, and that such effect of digging down and cutting the door would be apparent to any person of ordinary intelligence, then the plaintiffs cannot recover for any injury to said house caused by said inflow of surface water to such basement or cellar, notwithstanding the jury may find that the said grade of said street, and the insufficient size of said culvert, caused the inflow of said surface water to said basement in time of heavy rain.

*Second Exception.*—Stated in the opinion of the Court.

*Third Exception.*—While the case was being argued to the jury by Mr. Brace, for the plaintiffs, objection was made to the Court by Mr. Williams, of counsel for defendant, that the argument being made by Mr. Brace, was against the ruling of the Court, as contained in defendant's first prayer. Whereupon, Mr. Brace said that he was proceeding to argue that a proper construction of the concluding clause of said prayer (viz., "provided," &c.,) was, that said words were to be considered in connection with

the acts of the defendant in constructing its system of gutters through Bowery and Charles streets, which conducted the water therefrom into said culvert, and were not to be confined to the bare proposition as to what would be the effect of said culvert if no water was caused to flow into it. He then proceeded to reduce his proposition to writing, as follows:

Plaintiffs' counsel proposes to argue to the jury that the proper construction of the concluding clause of defendant's first prayer is as follows, viz., in determining whether or not the underground culvert made plaintiffs' property in a worse condition than if no culverts had been made at all, the question is to be considered in connection with the acts of the defendant, in constructing its system of gutters through Bowery and Charles streets, and leading the water therefrom into said culvert, and not to be confined to the bare proposition as to what would be the effect on plaintiffs' property of building said culvert, if no water had been caused to flow into it.

The Court, thereupon, after considering said proposition in connection with said first prayer, proceeded to say to the counsel, and in the hearing of the jury, that the prayer asserted as matter of law, that if the defendant properly, meaning with reasonable care and skill, graded and raised the bed of Bowery street, where it is intersected by Charles street, and if the defendant also constructed the said culvert thereunder for the purpose of carrying off the service water which flooded down Charles street, and along Bowery street, but that said culvert proved to be of insufficient dimension to carry off all of said surface water during times of heavy rains, and the plaintiffs suffered damage by the overflow of their premises through such insufficiency or other defect in the construction of said culvert, still the plaintiffs could not recover, provided the jury should further find that the plaintiffs' property was in no worse condition therefrom than if said

culvert had not been built, and the said surface water had been allowed to flow across the bed or over the top of said Bowery street at that point; that such was the meaning and scope of the prayer as the Court understood it, and then directed Mr. Brace to proceed with his argument, omitting the argument in the above proposition. The plaintiffs excepted.

*Fourth Exception.*—While the case was being argued to the jury by Mr. Brace, one of the plaintiffs' attorneys, he commenced to argue to the jury that the careless and unskilful manner in which the defendant's gutter down Charles street, (leading to the mouth of the culvert,) was made, caused or contributed to the flooding of the plaintiffs' premises; but the Court refused to allow him so to argue, on the ground that there was no evidence that the plaintiffs were injured thereby. The plaintiffs excepted.

*Fifth Exception.*—Stated in the opinion of the Court.

The jury rendered a verdict for the defendant, and judgment was entered accordingly. The plaintiffs appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, and BRYAN, J.

*William Brace*, for the appellants.

*William C. Devecmon*, and *Ferdinand Williams*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought to recover damages alleged to have been suffered, by reason of the backing and overflow of water, mud, &c. upon the property of the plaintiffs, caused, as it is alleged, by a badly constructed and insufficient underground sewer, in the town of Frostburg. It is alleged that, in the grading of two of the streets of the town, the surface water was diverted from its natural

course and flow, and collected into artificial drains or gutters in large volumes, and thereby caused to flow to a point in Bowery street opposite and near to the property of the plaintiffs, on the north side of that street, where the defendant caused to be constructed a sewer or culvert under and across Bowery street, by which such water was designed to be carried off and emptied on the south side of said street; but, by reason of the negligent, unskilful and defective construction and maintenance of such culvert, the same was insufficient, and failed to carry off the water conducted to the mouth thereof, and, consequently, the water and debris, so collected and conducted, were backed up and made to overflow upon the property of the plaintiffs, thereby causing great injury. The case was tried upon the general issue plea of not guilty.

By the charter of the town, full authority is conferred upon the Mayor and Councilmen to open, grade and pave streets, and to construct such gutters and sewers as, in their judgment, the public convenience may require, and to repair the same whenever needed. They are also empowered to remove all nuisances and obstructions from the streets, and they are clothed with power to pass all such ordinances as may be deemed beneficial to the town, and necessary for the safety and protection of person and property of the inhabitants thereof. Acts 1870, ch. 77; 1878, ch. 255.

The evidence shows that the town of Frostburg is built on the slope of a mountain, and the grades of its streets are, in many places, and in different directions, quite steep. Charles street has a heavy down grade to the point where it joins or intersects Bowery street, and the latter has a considerable ascent in both directions, east and west, from the point where such streets join at right angles. Artificial gutters have been made on the north side of Bowery street, and on the east side of Charles street, whereby the surface water, which flows on both streets in large

quantities during heavy rain falls, is collected and made to flow in the artificial gutters to the mouth of the sewer constructed diagonally across Bowery street, at the junction of Bowery and Charles streets. It is shown by the proof on the part of the plaintiffs, and, indeed, not controverted by the defendant, that this sewer or culvert was not of sufficient capacity, even if it had been otherwise well constructed, to carry off the water frequently flowing to it; but that, according to the proof offered by the plaintiffs, it was so unskilfully, negligently, and defectively constructed, that the flow of water was obstructed, and, consequently, dammed up, and made to overflow the adjoining premises of the plaintiffs, sometimes to the depth of two feet or more, carrying dirt and debris upon the same, thereby doing serious damage to the property. Proof was also adduced to show that the defendant was, for several years before suit brought, well aware of the defective and insufficient condition of the sewer, and of the injury suffered therefrom by the plaintiffs, but that it had failed to take any steps to remedy the defect. On the part of the defendant, proof was given to controvert, in several important particulars, the evidence on the part of the plaintiffs. The defendant also offered proof to show that the prior owner of the plaintiffs' property cut down and lowered the floor of the cellar of the house, and removed the earth between the house and the street, so that when the water was raised a few inches in the gutter on the street it ran into the cellar or basement of the house. This, however, was controverted by testimony for the plaintiffs.

Upon the whole evidence, both parties applied to the Court for instructions to the jury. But of the prayers offered, the one single prayer by the plaintiffs, and all those by the defendant, except the first and fourth, were rejected. It was therefore upon the first and fourth prayers of the defendant, given as instructions, that the case was placed before the jury. The plaintiffs excepted

to the refusal to grant their one prayer, and to the granting of the two prayers on the part of the defendant. And this Court is now called upon to determine whether there was error, in this ruling upon the prayers, committed by the Court below.

Before proceeding to notice particularly the prayers under review, we deem it proper to state the general doctrine of the law upon the subject, as we find it laid down by the most approved authorities.

How far the common law, independently of the special provisions of the statute incorporating the defendant, would furnish a remedy against a municipality for an injury such as that complained of here, is a question not necessarily involved in this case. For as we have seen, the statute, with a view to the improvement and benefit of the town, confers large powers upon the Mayor and Councilmen, with respect to streets, drains, sewers, &c., and also power to remove and prevent nuisances. It is out of these powers, and the manner of their exercise, and the duty resulting therefrom, that the liability here insisted upon arises to the plaintiffs, if it can be maintained at all, in respect to the facts of the case, as we have stated them.

In *Cooley on Constitutional Limitations, page* 248, it is laid down as the result of the decisions upon the subject, that "The grant by the State to the municipality of a portion of its sovereign powers, and their acceptance for these beneficial purposes, is regarded as raising an implied promise, on the part of the corporation, to perform the corporate duties ; and this implied contract, made with the sovereign power, enures to the benefit of every individual interested in its performance. In this respect these corporations are looked upon as occupying the same position as private corporations, which, having accepted a valuable franchise, on condition of the performance of certain public duties, are held to contract by the acceptance for the performance of these duties. In the case of public corpo-

rations, however, the liability is contingent on the law affording the means of performing the duty, which, in some cases, by reason of restrictions upon the power of taxation, they might not possess. But assuming the corporation to be clothed with sufficient power by the charter to that end, the liability of a city or village, vested with control of its streets, for any neglect to keep them in repair, or for any improper construction, has been determined in many cases. And a similar liability would exist in other cases where the same reasons would be applicable." In support of this text, the learned author refers to a number of cases; and the principle stated by him is in accord with the decisions of this Court, in the case of *Balto. City vs. Marriott,* 9 *Md.,* 160, and the recent case of *Taylor vs. Cumberland,* 64 *Md.,* 68. And on the next succeeding page of the author just cited, he says: "In regard to all those powers which are conferred upon the corporation, not for the benefit of the *general* public, but of the corporators,—as to construct works to supply a city with water, or gas works, or sewers, and the like,—the corporation is held to a still more strict liability, and is made to respond in damages to the parties injured by the negligent manner in which the work is constructed, or guarded, etc."

But notwithstanding this duty and liability of the municipality, in respect to powers delegated, there is a class of powers defined as discretionary or *quasi* judicial, which the corporate authorities cannot be compelled to execute. As, for instance, the opening, widening or extension of streets, the adoption of a particular grade, or the adoption of any particular plan for improvement, and the like, unless the terms of the statute are imperative. But any particular plan that may be adopted must be a reasonable one, and the manner of its execution thence becomes, with respect to the right of the citizen, a mere ministerial duty; and for any negligence or unskilfulness in the execution or construction of the work, whereby injury is inflicted upon private

right, the municipality will be held responsible.   This is the principle maintained by the great preponderance of authority; and there is nothing in the case of the *City of Cumberland vs. Willison,* 50 *Md.,* 138, at all opposed to this principle, as would seem to be supposed by counsel for the defendant.   In that case, the authority delegated to the corporation to grade and improve its streets, was held to have been properly exercised, with no want of reasonable care and skill.   It was not attempted to be shown that the injury complained of had been produced by the want of care and skill in the grading and draining the streets; and there was no question of negligence or want of skill raised in the case.   But in the recent case of *Kranz vs. Baltimore City,* 64 *Md.,* 491, where the action was brought for injury sustained by a property holder, caused by obstructions in a sewer, and the overflow therefrom, upon the premises of the plaintiff, of water, mud, filth, &c., the result of the bad condition and want of repair of the sewer, this Court held, that the city was liable, as well for the consequences of the negligent failure to keep the sewer in repair, as for negligence and unskilfulness in actually making the repairs.   And the general proposition was maintained, that where a municipal corporation undertakes, in the discharge of its duties, to *construct* or repair such a work as a sewer or culvert, it is responsible for damage caused by the negligent, careless or unskilful manner of performing the work; and 2d *vol. of Dillon on Municipal Corporations, sec.* 1049, is cited with approval.   And in that same work, in sec. 1051, where the author sums up and states the result of the authorities upon the subject of municipal liability for injuries caused by surface water, the following, among other propositions, is formulated: " There is a municipal liability where the property of private persons is flooded, either *directly* or by water being *set back,* when this is the result of the negligent execution of the plan adopted for the construction of gutters, drains,

culverts, or sewers, or of the negligent failure to keep the same in repair and free from obstruction, and this whether the lots are below the grade of the streets or not." The cases says Judge DILLON, support this proposition with great unanimity. Of the many cases cited by the author, we need only refer to those of *The Rochester White Lead Co. vs. Rochester,* 3 *N. Y.,* 463 ; *Barton vs. City of Syracuse,* 36 *N. Y.,* 54 ; *Rowe vs. Portsmouth,* 56 *N. H.,* 291, and *Noonan vs. City of Albany,* 79 *N. Y.,* 470.

Now, with these general principles in view, we will turn to the prayers which form the subject of the first exception by the plaintiffs. And, with respect to the one prayer offered by the plaintiffs, we think the Court below was right in rejecting it. By that prayer the Court was asked to instruct the jury, that if they should find that the defendant built the culvert described by the witnesses, and that the same was intended to receive and carry off the surface water flowing through the gutters, along Bowery and Charles streets, in times of rain ; and further find that such sewer or culvert was constructed *in such careless, unskilful and improper manner,* as, instead of carrying off such water, to cause the same to accumulate in large quantities at the upper end thereof, and from thence to flow back upon the property of the plaintiffs, and injure and damage the same, then the plaintiffs were entitled to recover. This prayer would seem, as a general proposition, to be quite correct, as far as it goes ; but in view of the evidence in the case, and to avoid misleading the jury, it ought to have gone further, and made reference to the evidence on the part of the defendant, whereby it was sought to show that, by cutting down the cellar floor of the plaintiffs' house, the water was in fact let in from the gutter on Bowery street, which did the injury complained of, and that such injury, therefore, was not caused by any fault of the defendant in the construction or repair of the sewer. For if it be true, that the injury suffered was in fact pro-

duced by water thus let in from the gutter, or in any other way than the backing and overflow of the water and *debris* from the mouth of the sewer, caused by the obstruction to its natural flow through such sewer, there would be no ground for recovery, either upon the allegations of the declaration, or the proof produced on the trial. But the prayer is defective in another particular. It wholly omits to submit to the jury to find whether the defendant had notice, either direct, or inferential by lapse of time, of the defective and insufficient condition of the sewer, and the injury resulting therefrom. *Kranz vs. Baltimore City,* 64 *Md.,* 491. It is clear, therefore, that there was no error in rejecting the prayer offered by the plaintiffs.

But we think there was error in granting the prayers of the defendant. The first of these prayers, as construed by the Court, in the course of the argument of counsel to the jury, is based upon the theory that the plaintiffs could not recover, notwithstanding the jury might find from the evidence that the surface water was diverted from its natural flow, by the elevation and improvement of the streets, and by the artificial gutters and drains, whereby such surface water was collected in volume, and conducted to the mouth of the sewer opposite the adjoining property of the plaintiffs, whence it could not escape, except by flowing over the premises of the plaintiffs, "if the jury should find that the cause of the back flow of the water was the elevation of the street, and that said culvert was *insufficient in size* to carry off all of such water in times of heavy rain; provided the construction of the culvert did not place or leave the said property in a worse condition *than if no culvert had been made at all.*" To this proposition we cannot assent. Reason, as well as authority, would seem clearly to oppose it. We fully agree with Judge DILLON, in the principle stated by him in section 1042, (vol. 2,) of his work on *Municipal Corporations.* In that section, after referring to the general doctrine that the municipality is not bound to

protect from surface water those who may be so unfortunate as to own property below the level of the street, he says: "It is possible there may be no middle ground, but we are unable to assent to the doctrine that by reason of their control over streets, and the power to grade and improve them, the corporate authorities have the absolute and unconditional legal right intentionally to divert the water therefrom as a mode of protecting the streets, and to discharge it, by artificial means, in increased quantities and with collected force and destructiveness, upon the property, perhaps improved and occupied, of the adjoining owner." Here, Bowery street runs east and west from the mouth of the sewer; and the declivity of the hill, along the side of which that street is made, is to the south. The natural flow of the surface water, therefore, as shown by the proof and the plat exhibited, is to the south. But this natural flow has been interrupted by the elevation of Bowery street on the south side thereof, and the water has been concentrated in a gutter and made to flow to the mouth of the sewer, opposite the property of the plaintiffs, on the north side of that street. If then it be true, as it clearly is upon unquestionable authority, (*Lynch vs. the Mayor,* 76 *N. Y.,* 60; *Byrnes vs. Cohoes,* 67 *N. Y.,* 204; *O'Brien vs. City of St. Paul,* 25 *Minn.,* 333; *Inhabitants of West Orange vs. Field,* 37 *N. J. Eq.,* 600; *Ashley vs. Port Huron,* 35 *Mich.,* 296,) that the corporation cannot thus divert the flow of surface water, concentrate it in volume and force, and empty it upon private property, without becoming liable, it must follow, that there is a duty incumbent upon the corporation to provide, by adequate means, for passing off the water, thus concentrated in volume, so as to avoid doing damage to private property. The street may be properly graded, and the drains properly made, but the sewer made for the purpose of receiving and carrying off the water, cannot be said to be skilfully and carefully constructed, or kept in repair, if, from any structural cause,

it be insufficient to pass off the water flowing to it, through
the artificial channels provided.   If it be true, as alleged
and shown by the plaintiffs, that the surface water was
gathered into artificial channels or gutters, and made to
flow to the mouth of the sewer, where it was allowed to
accumulate in large quantities, and thence flow back upon
the property of the plaintiffs, this constituted a nuisance ;
and, as such, it was certainly the duty of the defendant
to remove it; and for the neglect of such duty the defend-
ant is liable.   For as was said by the Court of Appeals of
New York, in the case of *Noonan vs. City of Albany,* 79 *N.
Y.,* 470, "a municipal corporation has no greater right than
an individual to collect the surface water from its lands
or streets into an artificial channel, and discharge it upon
the land of another, nor has it any immunity from legal
responsibility for creating or maintaining a nuisance."

The second prayer granted on the part of the defendant
is obnoxious to the same objection that applies to the first.
The plaintiffs, and those under whom they claim, had,
clearly, the right to the use and enjoyment of their property,
in any reasonable way, and for any reasonable purpose,
and to make any alteration or new adaptation therein, that
they deemed proper, without thereby subjecting themselves
to the loss of protection to their property from wrongful
invasion, by inundation or otherwise.   Hence it was error
to instruct the jury upon certain enumerated facts, in re-
spect to the lowering of the cellar floor, (as was done by
granting this prayer,) "that the plaintiffs could not recover
for any injury to said house caused by said inflow of surface
water to such basement or cellar, notwithstanding the
jury might find that the grade of said street, *and the in-
sufficient size of said culvert caused the inflow of said surface
water to said basement* in time of heavy rain."   If the in-
jury complained of was sustained by reason of the backing
of the water from the mouth of the culvert, where it had
been brought in large quantities by artificial drains, and

that such backing and overflow were caused by the defective and insufficient sewer or culvert, and would not have occurred but for that cause, then the fact that the floor of the plaintiffs' cellar had been lowered, afforded no justification to the defendant for the defective and insufficient sewer.   The cause of the injury was the fault of the defendant, and not of the plaintiffs.

In thus disposing of the two prayers granted for the defendant, we also dispose of the Court's construction of the first prayer, as stated in the third exception.   And as to the question raised and stated in the fourth exception, we think the Court was quite right in ruling as it did.   There was no question before the jury as to the want of care or skill in the construction of the gutter or passageway for the water along Charles street.   Defects and unskilfulness in the construction of that gutter, or negligent failure to keep it in repair, are not alleged as substantive and independent causes of injury; nor was there any proof to show that injury was suffered from that cause.

The second and fifth exceptions present questions of practice.   It appears, by the second exception, that, after the Court had ruled upon the prayers for instruction, and granted such as were approved, the counsel for the plaintiffs, in argument to the jury, proceeded to read the declaration.   To this the counsel on the other side objected; and upon inquiry by the Court as to the purpose of reading the declaration to the jury, the counsel for the plaintiffs said, "that his purpose was to call the attention of the jury to the testimony in the case, and to apply such testimony to the allegations of the declaration, and to argue that said allegations, and each of them, were sustained by the evidence in the case, and therefore plaintiffs were entitled to recover, because defendant had not demurred."   The Court would not permit the declaration to be read, and the plaintiffs excepted.

This Court is clearly of opinion that the action of the Court below was entirely correct.   Otherwise it would be

simply an appeal from the Court to the jury. If the jury could be induced to conclude that the allegations of the declaration were sustained by the proof, however inconsequential or immaterial, in a legal point of view, they might be, and notwithstanding the Court may have instructed to the contrary of the plaintiffs' contention, upon the theory contended for here, the plaintiffs could recover. Such theory has no foundation in reason, principle or practice. The instruction given for the guidance of the jury, made no reference to the pleadings in the case, and therefore the jury were not required to look at the pleadings, to ascertain how they were to find.

In the fifth exception it is stated, that at the conclusion of the argument, and when the jury were about to retire to consider of their verdict, the counsel for the plaintiffs asked that the jury be allowed to take with them to their room the declaration in the case. This request, upon objection by the defendant, was refused by the Court, and the plaintiffs excepted. This refusal by the Court, we think, forms no ground of exception by the plaintiffs. It is true, it is said by the late Mr. Evans, in his work on *Maryland Practice, page* 400, that when the jury withdraw from the bar, "they have the right to take with them the pleadings in the cause, and the written directions of the Court;" and this passage of the work was referred to in the opinion of this Court, with apparent approval, though not at all necessary to the decision, in the case of *Ingalls vs. Crouch,* 35 *Md.,* 296. In the case just mentioned, it was not said or intimated that the practice was so established as to forbid the exercise of the discretion of the Court below over the subject, and that the refusal to allow the pleadings to be taken by the jury was a subject of exception and review. On the contrary, there are many reasons for holding that the matter rests exclusively in the discretion of the Court below. In any case where the Court may suppose that the jury might be misled by the statements and

allegations of the pleadings, it would certainly be proper that the pleadings be withheld from them. They are not supposed to be the best judges of the technical language of pleading, and able to determine when the allegations are or are not supported, in the contemplation of law. It is in this that the aid of the Court is required, and the instructions of the Court form the exclusive guide to the jury. If the instructions given, as in this case, make no reference to the pleadings, even this Court, on review, will not assume that the Court below inspected the pleadings, and adjudged them sufficient to sustain the instructions. *Stockton vs. Frey,* 4 *Gill,* 406; *Owings vs. Jones,* 9 *Md.,* 116. The issues to be tried are supposed to be fully explained to the jury at the bar, in the course of the trial, and therefore the jury are not left to grope through the technical verbiage of pleading to ascertain for themselves what issues they are required to determine. Whether they should take with them to their room the pleadings in any case, is matter of discretion of the Court below, and not the subject of review on appeal.

It follows from what we have said in regard to the two prayers granted on the part of the defendant, that the judgment must be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*