ZYWICKI v. JOS. R. FOARD CO. OF BALTIMORE CITY et al.

(District Court, D. Maryland.  July 22, 1913.)

MUNICIPAL CORPORATIONS (§ 735*)—LIABILITY FOR TORTS—FAILURE TO EXERCISE CHARTER POWERS.

That the city of Baltimore is given power and authority by statute to regulate navigation on the Patapsco river, including the stationing and loading of vessels, and that it failed to make and enforce regulations governing the loading and shipment of explosives, does not render it liable to a stevedore, injured through the negligence of a foreman in stowing a cargo of dynamite.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1551;  Dec. Dig. § 735.*]

In Admiralty.  Suit by Barney Zywicki, by his mother and next friend, against the Jos. R. Foard Company, of Baltimore City, the General Stevedoring Company, and the Mayor and City Council of Baltimore.  On exceptions by the city to the libel.  Exceptions sustained.

Thomas F. Cadwalader, of Baltimore, Md., for libelant.
S. S. Field, City Sol., and Alexander Preston, both of Baltimore, Md., for Mayor and City Council of Baltimore.

ROSE, District Judge.  In March last the British steamship Alum Chine came to Baltimore to take on board a cargo of dynamite to be carried to the Isthmus for use on the Panama Canal.  The ship was lying in the quarantine anchorage of the port.  Several hundreds of tons of dynamite in boxes had been put on board.  A large gang of stevedores were taking similar boxes from a lighter alongside and were stowing them in the hold.  A fire broke out on board.  Those on the ship, or most of them, fled to a tug alongside.  Before the latter could get sufficiently far away, a great explosion took place.  Many on the tug, as well as others on other craft, were killed or injured.  The libelant says that he was employed by the two respondents first named above to help in loading the dynamite.  The work was in charge of a foreman, who, in order to fit a box of dynamite firmly in place, struck either it or a box adjoining with a bale hook.  The blow caused "an explosion or flaring" of a part of the dynamite in the box with which the hook had come into contact.  The cargo took fire.
The libelant was one of those who fled to the tug.  He was frightfully injured by the explosion.  He sues, not only the two corporations in whose employ he was, but the municipality of Baltimore.  He says that by statute the respondent in question was given the power and charged with the duty of preserving the navigation of the Patapsco river and its tributaries, and of removing therefrom everything detrimental to navigation or health.  It was authorized to regulate the stationing, anchoring, and moving of vessels and other water craft, and the manner in which dynamite and other high explosives should be delivered for shipment, shipped, and transported in and upon such waters.  It assumed the discharge of all these obligations.  The libel

then charges that the city failed to adopt or publish regulations governing the shipment of dynamite or other explosives, or the manner in which the same should be handled or loaded into vessels, in order to prevent explosions or to lessen the danger thereof. The libelant says he assumed, as he was entitled to assume, that the city had made such rules and was enforcing them, and that the dynamite would be handled in accordance with them, with care and caution, and that the use of sharp instruments in connection with such explosive substances would be prohibited.

The city has excepted to this libel. It says that the General Assembly of Maryland by the act of March 14, 1912, expressly relieved it from any future liability for damages suffered upon the waters of the Patapsco.

The libelant replies:

(1) The act relied on by the city was never validly enacted. Its title did not conform to the requirements of the state Constitution, and in defiance of the provisions of that instrument it dealt with various unrelated subjects.

(2) The provision referred to is in conflict with the fourteenth amendment to the federal Constitution. It seeks to deprive those who on the river suffer from the negligence of the city of the equal protection of the laws and takes from them their rights of action without due process of law.

(3) The act, when properly construed, has no application to the case set up by the libel.

Some or all of these contentions may require careful consideration in connection with the claims for compensation made by persons who were injured by this explosion, but who were not in any wise voluntarily connected with the placing of dynamite on the Alum Chine. But, for the question here at issue, is it necessary to inquire into either the validity or the construction of the act of 1912?

The libel says that the explosion was the result of the reckless act of the foreman of stevedores in striking a box of dynamite with a sharp instrument. It asserts that the city should have forbidden the use of such instruments in handling explosives. It assumes that such prohibition, if issued, would have been obeyed by the possibly hot-headed and conceivably careless stevedore. The assumption seems to be sufficiently doubtful.

For the purpose of disposing of the questions raised by the pleading, it may be taken as well founded. The contention of the libelant opens a more fundamental inquiry. Is a municipal corporation liable for all damage which might have been prevented by the full and vigilant exercise of all its charter powers? It is its duty to exercise reasonable forethought and energy to keep safe for travel the public highways whether on land or water. In this state and in this federal circuit the obligation is broadly construed and strictly enforced. County Commissioners v. Duckett, 20 Md. 468, 83 Am. Dec. 557; State v. Miller, 194 Fed. 775, 114 C. C. A. 495.

Libelant contends that a municipality is equally liable for failure to exert any other authority which has been granted it for the protec-

tion of life, health, or property. His argument is that, as the city has been given power to keep the highways free of nuisances and dangers, if it carelessly fails to use these powers it must make good to A. any damage which he in consequence suffers. It has no less authority to protect health and prevent conflagrations. If it fails to do so, it is liable to one who has been damaged as a result.

Every such grant of power imposes a correlative duty, enforceable by whosoever is hurt by its nonperformance. Quotations are made from various judicial opinions in highway and similar cases to show that the reasons which have made municipalities liable in them are equally applicable to the facts of the case at bar.

In the learned and able brief filed by libelant's proctor he does not question that a municipality cannot be held responsible for failure to exercise efficiently its purely governmental powers. He merely contends that its duty to safeguard life, health, and property is imposed upon it in its private rather than in its public capacity. He nevertheless fails to cite a single decided case in which judgment has been given against a municipality under circumstances which seem to be in any wise analogous to those alleged in his libel.

Libelant has been fortunate to secure the services of an unusually able and industrious proctor. There must have been hundreds and thousands of cases, perhaps tens of thousands of them, in which somebody has suffered injury to person or property which would not have been incurred, had municipalities done well everything they had the power to do. Guests at hotels and boarding houses and in private families have become ill, sometimes unto death, because some city has not done what it legally might have done to protect the public health. Workmen and others have been killed or maimed by the collapse of buildings which a negligent or corrupt municipal inspector had suffered to be erected. In all these cases the sufferers could have said that they assumed that the city has done all that it could and should have done.

If libelant's theory be granted, it perhaps makes no difference whether such assumption was conscious, or was altogether subconscious, or whether it was purely the creation of a useful legal fiction. The analogy between one who is injured in the highway in consequence of some neglect upon the part of the city to keep such highway clear of nuisances and dangers and the facts of the case in hand is to my thinking by no means so close as it appears to libelant. Municipalities have a proprietary interest in the highways and in much other property besides. To some of it whatever title they have is merely as trustee or quasi trustee for the public. Some of it belongs to them in very much the same sense as the property of other corporations is owned by the latter. There is nothing illogical in holding that their obligations with reference to the care and management of any property is different in kind as well as in degree from those resulting from the grant to them of the numerous and constantly increasing powers of regulation over the general activities and pursuits of the community.

206 F.—62

It is admitted that there are some municipal powers for the non-exercise of which municipalities are not responsible to individuals. It is asserted, however, that much which has been said by courts of high authority logically forbids that such a case as that now under consideration shall be distinguished from the highway cases. Whether the distinction would or would not commend itself to a professional logician is beside the mark. The fact that in numerous cases municipalities have been held liable for injury resulting from their neglect of the duty of making and keeping the highways safe, and that no case has been found in which one of them has been made answerable under a set of facts at all similar to those now in question, sufficiently demonstrates the general understanding that such a distinction exists.

Logical anomalies are not unknown to any branch of the law. For the mere purpose of getting rid of the assumed existence of one of them, the courts may not, of their own motion, impose a great and burdensome obligation upon the municipalities of the country. If respect for logic requires that municipalities shall be made liable to those who in the future may be in like case with his client, the appeal must be addressed to the legislative and not to the judicial branch of the government. When, if ever, such an appeal is made, it will doubtless be found that there can be something said for restricting municipal liability within the bounds marked out by well-established precedents.

It follows that the exceptions of the mayor and city council of Baltimore to the libel must be sustained.