# JOHN GUTOWSKI

*vs.*

# THE MAYOR AND CITY COUNCIL OF BALTI- MORE, A Body Corporate.

*Patapsco River: jurisdiction over—; loading dynamite.  Balti- more City: enforcing statutes.  Police Department.*

The provisions in the Charter of Baltimore City, authoriz- ing it to provide by ordinance for preserving the navigation of the Patapsco River and its tributaries; for establishing the limits beyond which piers, etc., may not be built; for cleaning and deepening the channels; for removing obstructions to navi- gation, etc.; for regulating the anchoring or moving of vessels; for regulating the use of wharves and piers, with penalties for the violation of the same, do not confer any power to regulate the loading of explosives in vessels stationed either within or beyond the city limits, excepting as to the location and move- ment of vessels receiving or discharging such cargoes.     p. 504

Inasmuch as the Police Department of the City of Baltimore is controlled by a commission appointed by the Governor of the State, and operating independently of the municipal govern- ment, the city is not liable for damages on account of the non- performance of its police regulations, except in cases where its own conduct has produced the conditions which caused the injury.                                              p. 505

The exercise by the City of its authority to provide for the safety of persons or property, where its corporate or proprie- tary interests do not require such action, is a governmenatl func- tion for the non-performance of which it can not be sued, unless such a right of action is given by statute.           p. 507

*Decided January 14th, 1916.*

Appeal from the Court of Common Pleas of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*David Ash* (with whom was *Charles Jackson* on the brief), for the appellant.

*Robert F. Leach, Jr., Assistant City Solicitor* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The City of Baltimore is sued in this case, with other defendants, on account of personal injuries sustained by the plaintiff while engaged, as an employee of a stevedoring company, in the work of loading a vessel with a cargo of dynamite. The injuries were caused by an explosion resulting, as alleged, from the use of iron hooks in the process of moving and storing the boxes in which the dynamite was contained. It is averred in the declaration that the cargo was being loaded into the vessel at a point in the Patapsco River within the jurisdiction and under the control of the Mayor and City Council of Baltimore, and subject to municipal laws, ordinances and regulations which prohibited the use of iron hooks in such work, and which the City had undertaken to enforce, but negligently permitted to be disregarded. There are further allegations of negligence, but as they are directed against the other defendants, whose liability is not now to be determined, they need not be recited. A demurrer to the declaration was filed by the City and was sustained.

The plaintiff not having availed himself of the right to plead over, a judgment for the City was entered and is the occasion of this appeal.

It is not alleged that the place of the accident was within the *corporate limits* of Baltimore, and it is conceded in effect that the explosion occurred at a point in the river beyond the City boundaries, but the averment that the dynamite was being loaded on the vessel at a location within the jurisdiction and control of the municipality has reference to a provision of the City Charter giving the Mayor and City Council authority to pass ordinances for certain purposes relating to navigation and docking facilities on the river and its tributaries throughout their entire length. These provisions, however, do not purport to confer any power to regulate the loading of explosives in vessels stationed either within or beyond the City limits. They authorize the municipality to provide by ordinance for preserving the navigation of the river and its tributaries, for establishing lines beyond which no piers, wharves or other structures should be built or extended in the waters mentioned, for improving, cleaning, deepening, surveying and marking their channels, for removing therefrom anything detrimental to navigation or health, for regulating the stationing, anchoring and moving of vessels, for preventing refuse or material of any kind from being deposited or washed into the waterways, for erecting, maintaining and regulating the use of wharves, bulkheads, piers and piling, for the collection of dockage, wharfage and other charges, for the appointment of such officers and employees as might be necessary to accomplish the objects specified, and for the imposition of fines or penalties for a breach of any ordinance passed in pursuance of the powers thus conferred. (Baltimore City Charter, sec. 6 (8).)

It is apparent that these designated purposes do not include the regulation and supervision of the methods employed in the transfer of explosives, except as to the location and movement of vessels engaged in receiving or discharging such

cargoes. The police power, delegated by the charter, to provide "for securing property and persons from violence, danger and destruction," and doubtless its general welfare powers under the charter, would enable the City to require suitable precautions to be taken in the disposition of dynamite and other dangerous agencies, but the grant of such authority does not provide for its exercise beyond the corporate area. If, as alleged in the declaration, an ordinance has been passed prohibiting the use of metal hooks in the movement of explosives, such an enactment could not be supposed to have an extra-territorial effect merely because the City has been given the right to legislate for other designated and distinct purposes with respect to the harbor approaches lying outside of the municipal boundaries.

But if it be assumed that the City's police power to regulate the disposition of explosives is co-extensive, as to the area of its proper exercise, with the powers specifically granted in relation to the Patapsco River and its tributaries, there would still be a serious obstacle to the maintenance of such a suit as the present against the Mayor and City Council. The Charter of the City makes it the duty of the Board of Police Commissioners to enforce the municipal ordinances. (Charter, Sec. 744). It has been definitely held that inasmuch as the police department of the City is controlled by a commission appointed by the Governor of the State, and operating independently of the municipal government, the City is not liable for damages on account of the non-enforcement of its police regulations, except in cases where its own conduct has produced the conditions which caused the injury. In the case of *Taxicab Co.* v. *Baltimore,* 118 Md. 359, a contractor had left a quantity of building material in the street at night without placing a light to give warning of its presence. The plaintiff's taxicab collided with this obstruction, and the City was sued, with the contractor, for the damage thus occasioned. A municipal ordinance provided that whenever any piles of building materials were left in the street, a lighted

lamp or lantern should be placed on them at night so that they could be readily observed. There was a penalty prescribed for the violation of this requirement. As the City did not authorize the obstruction in question, and as it had no control over the police department to which the enforcement of its ordinances was committed by statute, the decision in the case was that the suit against the municipality could not be maintained. The same conclusion had been reached upon a somewhat similar state of facts in *Sinclair* v. *Baltimore.* 59 Md. 592.

In *Altvater* v. *Baltimore,* 31 Md. 465, a pedestrian was struck and injured by a sled coasting on the street in pursuance of a practice which was so general and frequent as to be a nuisance. While it was the duty of the Mayor and City Council to pass suitable ordinances, as authorized by the charter, for the prevention and removal of nuisances, it was held that since the duty of enforcing such ordinances had been devolved upon an independent police department, the City could not justly be subjected to liability for their non-enforcement. But the City has been held properly chargeable with responsibility for injuries in cases like *Baltimore* v. *Beck,* 96 Md. 183, where it failed in the affirmative duty of lighting the street on which the accident occurred; and *Baltimore* v. *Walker,* 98 Md. 637, where it negligently located a water pipe on a sidewalk in such a position that it extended several inches above the surface; and *McCarthy* v. *Clark,* 115 Md. 454, where an obstruction was placed on a sidewalk by contractors employed by the City in sewer construction. In the latter cases the injuries complained of did not result from the violation by others of ordinances which were not being actively enforced, but from conditions which the City's own conduct or dereliction of duty were alleged to have directly produced.

Upon the principles applied and illustrated in the cases to which we have referred it would seem to be clear that damages are not recoverable from the municipality by a per-

son injured in consequence of the violation of a municipal ordinance regulating the movement of explosive substances, unless the City itself caused or sanctioned the particular conditions or acts which produced the injurious results.    This would certainly be the rule in regard to accidents of that character within the corporate limits, and we find no justification in its charter for imposing a greater or stricter liability upon it with respect to similar occurrences on the waterways beyond its borders which the charter has placed under its control.    It is not alleged in this case that the City authorized or occasioned the dangerous practice mentioned in the declaration, but the averment is simply that it neglected to enforce its regulations prohibiting the employment of such methods.    This is not a sufficient basis upon which to charge the City with actionable responsibility for the accident.

There is still another consideration which prevents the acceptance of the theory of liability upon which the suit is predicated.    The exercise by the City of its authority to provide for the safety of persons or property, where its corporate or proprietary interests do not require such action, is a governmental function for the non-performance of which it can not be sued, unless such a right of action is given by statute.    For example, in establishing a system of gratuitous water supply for extinguishing fires, the City acts in its governmental capacity, and for its failure to provide a sufficient quantity of water for that purpose, it is not responsible in a suit for damages.    This was held in the recent case of *Wallace* v. *Baltimore,* 123 Md. 638, where the opinion delivered by JUDGE CONSTABLE points out the distinction between the essentially corporate capacity in which a municipality furnishes water to its inhabitants at stipulated rates, and the public or governmental function it performs in supplying water gratuitously for the extinguishment of fires.    In *Dillon on Municipal Corporations,* 5 ed., sec. 1627, it is said: "Unless there be a valid contract creating, or a statute declaring, the liability, a municipal corporation *is not bound*

*to secure a perfect execution of its by-laws,* relating to its
public powers, and it is not responsible civilly for neglect of
duty on the part of its officers in respect to their enforcement,
although such neglect results in injuries to private persons
which would otherwise not have happened." The next suc-
ceeding section of the same work illustrates the principle as
follows: "A failure by the corporation *to exercise its char-
ter power to abate nuisances* not rendering its streets unsafe
does not give a person who is injured by such failure a pri-
vate action against the corporation; and therefore where a
house in a city was destroyed by fire caused by sparks from
an engine on the adjoining property, which was by ordinance
a nuisance that the city might have abated, but which after
notice and request it had neglected to abate, the city is not
liable in damages for such non-action and neglect, to the
owner of the house destroyed."

In this State municipalities have been held legally respon-
sible for injuries caused by dangerous street conditions which
they had power under their charters to prevent or remove.
This rule of liability has been enforced upon the theory that
the grant of authority for such purposes created a correspond-
ing duty and obligation to efficiently exercise the power.
The language used in the opinions applying this principle to
street obstructions and nuisances has occasionally been broad
enough to include municipal duties generally, without refer-
ence to the distinction as to their corporate or governmental
character, but in every instance in which the liability re-
ferred to has been enforced by this Court, the default or neg-
lect related to a duty or an undertaking in reference to
which the municipality had a proprietary or participating
interest. The streets of an incorporated town or city being
subject to direct and exclusive municipal control, it has
been held that, with ample power to prevent and abate nui-
sances, the corporation was liable to suit for injuries caused
by hazardous conditions which it negligently created or per-
mitted to exist in its public thoroughfares, except in the

cases in which the City of Baltimore has been relieved of that responsibility by the transfer of its police force to a separate governing authority.   This general theory led to the enforcement of liability against the defendant municipality in *Baltimore* v. *Marriott,* 9 Md. 160, where a pedestrian was injured by an accumulation of ice on a sidewalk; in *Baltimore* v. *Pendleton,* 15 Md. 12, where a horse fell into an excavation in the street; in *Taylor* v. *Cumberland,* 64 Md. 68, where coasting on the street, which had been practiced to such an extent as to become a nuisance, was the cause of injury to a person who was in the act of crossing the street; in *Cochrane* v. *Frostburg,* 81 Md. 54, where the plaintiff was attacked and trampled by a cow, which, like numbers of other cattle, had been allowed to run at large on the streets; in *Hagerstown* v. *Klotz,* 93 Md. 437, where a person was knocked down on the street by a bicycle propelled, as customarily permitted, at an immoderate speed; in *Baltimore* v. *Beck, supra,* where the accident was due to the failure to light the street; in *Havre de Grace* v. *Fletcher,* 112 Md. 562, where a pedestrian was injured by the falling of a stack of beer kegs which had been allowed to remain in a dangerous position immediately adjacent to a footway; in *Annapolis* v. *Stallings,* 125 Md. 343, and *Keen* v. *Havre de Grace,* 93 Md. 34, where the injuries were due to the nonrepair of street pavements; and in *Commissioners of Delmar* v. *Venables,* 125 Md. 471, where a wagon was overturned by a stump left in the roadway.   In such instances the liability of the municipal corporations is sustainable upon the basis of their proprietary interest in the thoroughfares which they are empowered to maintain and keep safe for travel. The same liability attaches also in cases of injuries to person or property resulting from negligence or trespass in the performance of work undertaken by a city or town through its employees or contractors.   *Cumberland* v. *Willison,* 50 Md. 138; *Frostburg* v. *Dufty,* 70 Md. 47; *Hitchins* v. *Frostburg,* 68 Md. 100; *Baltimore* v. *Walker,* 98 Md. 637; *Mc-*

*Carthy* v. *Clark,* 115 Md. 454; *Thillman* v. *Baltimore,* 111
Md. 131; *Kurrle* v. *Baltimore,* 113 Md. 63; *Hanrahan* v.
*Baltimore,* 114 Md. 517; *Baltimore* v. *Schnitker,* 84 Md.
43; *Cahill* v. *Baltimore,* 93 Md. 233; *Guest* v. *Church Hill,*
90 Md. 689; *Baltimore* v. *O'Donnell,* 53 Md. 110.

The considerations which governed the cases we have cited
do not have the same application to the function of regulat-
ing the transhipment of explosives in a locality which is not
shown to have an unsuitable relation, for that purpose, to a
highway or other public place under the City's control.    If
every grant of authority to such a corporation to provide by
ordinance against danger to person or property were to be
treated as a ground and measure of liability to suit for the
non-exercise of the authority to the full extent to which it is
conferred, the consequences of such a comprehensive rule of
liability would be exceedingly onerous and often unjust. The
decisions dealing with such questions recognize the difficulty
of drawing a clear and definite line of distinction between
municipal duties and powers which are to be regarded as
governmental, and those which should be described as cor-
porate in their character, but, with respect to such a situation
as the one disclosed in the declaration filed in this suit, we
can have no doubt that the asserted duty should properly be
included in the former class, and its non-performance held
to be an insufficient ground upon which to require the city
to respond to a suit for damages.

This was the conclusion announced by Judge Rose in an
admiralty proceeding against the City of Baltimore and other
defendants growing out of the very accident which gave rise
to the present suit (*Zywicki* v. *Jos. R. Foard Co. et al.,* 206
Fed. 975), and it was also the view taken by that learned
judge, and, on appeal from his decision, by the United States
Circuit Court of Appeals, for the Fourth Circuit, in *State,
use of Goralski, et al.* v. *Jos. R. Foard Co. et al.,* 213 Fed.
51, and 219 Fed. 827, in which a number of other claims
for injuries resulting from this same explosion, were tried

and determined in admiralty. In the first of the cases just cited the charge of negligence against the city was similar to that set forth in the present declaration, while in the latter cases the negligence was alleged to consist in the designation by the city of an improper place for the stationing of the vessel to receive the cargo, and in its not having properly supervised the work of loading the dynamite where an explosion would probably be destructive to life and property. These positions were held to be untenable in view of the governmental nature of the duty.

The distinction between corporate and governmental powers and duties of municipalities is discussed in notes to the cases of *Barron* v. *Detroit* (Mich.), in 19 L. R. A. (N. S.) 452, and *Dickinson* v. *Boston* (188 Mass. 595) in 1 L. R. A. (N. S.) 665. Some of the later decisions on the subject are: *Bisbing* v. *Asbury Park* (N. J.), 78 Atl. 196; *City of Indianapolis* v. *Williams* (Ind.), 108 N. E. 387; *Salmon* v. *Kansas City* (Mo.), 145 S. W. 28; *City of Radford* v. *Clark* (Va.), 73 S. E. 574; *Hines* v. *City of Nevada* (Iowa), 130 N. W. 181; *Hull* v. *Town of Roxboro* (N. C.), 55 S. E. 351.

In the view we have taken of the case at bar we do not find it necessary to consider the charter provision, cited in argument, exempting the City of Baltimore from liability for any unsafe conditions in the Patapsco River or its tributaries except in regard to such as may occur at the docks or wharves owned by the Mayor and City Council.

*Judgment affirmed, with costs.*