# JENNIE COCHRANE *vs.* THE MAYOR AND CITY COUNCIL OF FROSTBURG.

*Liability of Municipal Corporation for Injury by Cattle Running at Large.—Nuisance.*

When a municipal corporation has the power to abate a nuisance, it is liable to persons injured in consequence of its failure to exercise such power.

The Mayor and City Council of Frostburg is authorized by its charter to pass and enforce ordinances to remove nuisances from its streets, as well as regulations necessary for the peace, good order and safety of the city. In an action against the municipality, the declaration alleged that the defendant permitted large numbers of horses and cattle to run at large upon the streets, and had failed to pass any ordinances to remove such nuisance and source of danger; and that while plaintiff was walking in a street of said city, she was attacked and trampled upon by a cow so running at large and greatly injured. Upon a demurrer to the declaration, *Held*,

1st. That under its charter the defendant had the power to prevent cattle from running at large within the corporate limits, and that it was its duty so to do if the allegations of the declaration were true.

2nd. That if the animal by which the plaintiff was injured was on the street without any fault on the part of the owner, then the defendant is not liable; for a municipal corporation should not be held to a higher degree of liability for injuries done by domestic animals than the owners thereof.

3rd. That the defendant would not be liable unless it could have prevented this animal from running at large by the exercise of ordinary care.

4th. That if the animal causing the injury to the plaintiff was on the street for so short a time that it could not have been discovered by the defendant's officers by the exercise of reasonable diligence before it attacked the plaintiff, then the defendant would not be liable, unless the cow's running at large can be attributed to the failure of the defendant to pass and enforce ordinances to prevent cattle from running at large.

Appeal from the Circuit Court for Allegany County. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*Robert R. Henderson* and *Benjamin A. Richmond* for the appellant.

(1.) It is clear that the municipality of Frostburg had power to abate nuisances. The language of its charter is clear and explicit. It is given ample power over nuisances *eo nomine*, and the " general welfare" clause is also broad enough to cover nuisances. This is not denied by defendant, but the contention is made that the acts complained of do not constitute the sort of a nuisance which is covered by the general nuisance powers.

(2.) The act complained of—the permitting of animals to run at large under the conditions and in the manner set out in the declaration is a nuisance, and it is such a nuisance as the city had power to abate. The defendant insists that the nuisance for which the city can be liable must be a nuisance at common law, and that this one is not a common law nuisance. Without admitting this, we inquire, what, then, is a common law nuisance? Is it one which has been declared to be a nuisance by some decision at the common law? Yes; but it is not that alone. We assert that reason and principle declare that act to be a nuisance which comes within the common law definition of a nuisance, whether any decision can be produced declaring it so or not. The act or thing which contains the essential elements of a nuisance, as defined by the common law, is as much a nuisance as if it had been decided to be so in an adjudicated case. The test is not whether the Judges have said a particular thing is a nuisance, but whether it has those attributes which make up a nuisance.

If we take the broad definition of nuisance at common law, and apply it as the cases arise, we shall find that it adapts itself to the ever-changing necessities and conditions of life; it is just as serviceable now as it was when first adopted; it is expansive enough to embrace all those new forces and

agencies which modern ingenuity and scientific investigation have added to the list of man's implements, and to exclude those things formerly harmful which have now been made harmless or even beneficial. If only those things which the common law had *in totidem verbis* declared to be nuisances can be abated by a municipal corporation under its general powers, then a live electric wire in the streets of a populous city is not a nuisance, and the manufacture of glass is; a steam locomotive engine running at full speed through the streets of a city is not a nuisance, but a brewery is.

(3.) The question of what constitutes a nuisance is one of law for the Court. *Wood on Nuisance*, 2nd ed. sec. 22; *Taylor* v. *Cumberland*, 64 Md. 68.

(4.) It follows that the Court can, in applying the principles of the common law, decide those things to be nuisances which come within those principles, whether they have ever been decided to be a nuisance before or not, and when so decided they are common law nuisances. Coasting on the public streets had never been decided to be a nuisance until *Taylor* v. *Cumberland*, 64 Md. 68, so held, and the city's powers in that case were no more specific and no broader than in the case at bar. So of ice on sidewalks. *Marriott's case*, 9 Md. 160. In *Commonwealth* v. *Curtis*, 9 Allen (Mass.) 266, the Court holds that a municipality has power under the general authority given it over nuisances to pass an ordinance prohibiting swine from going at large upon the public streets. *Commonwealth* v. *Patch*, 97 Mass. 221.

Do the acts here alleged constitute a nuisance? In the environment set out in the declaration, they certainly do. Frostburg is a populous town of upwards of five thousand inhabitants, and while cattle running at large might not be a nuisance in the country, they certainly are in a town. They are dangerous to life and limb, being provided with horns and hoofs, which it is their nature to use. They are subject to sudden panics and become uncontrollable. They

are easily excited to anger, especially by the color red. They make loud and unseemly noises. They soil the streets and sidewalks and are in the way of persons passing. They frighten women and children. If all the owners of cows, pigs and horses and other beasts in Frostburg were to allow their animals to go upon the streets, as they have the right to do under the present ordinances, the streets would become impassable for people.

Most, if not all of the cases cited at bar by the defendant, proceed upon a doctrine of law entirely inconsistent with *Marriott's case* and the long train of decisions confirming it. It is the doctrine that "unless there be a valid contract creating, or a statute declaring the liability, a municipal corporation is not bound to secure a perfect execution of its by-laws, relating to its public powers, and it is not responsible civilly for neglect of duty on the part of its officers in respect to their enforcement, although such neglect results in injuries to private persons, which would otherwise not have happened." *Dillon Municipal Corporations,* 4th ed. sec. 950, 951. Many States have adopted this principle, amongst them Georgia and New York, but it is impossible to reconcile this with the well-settled and repeatedly re-affirmed doctrine of *Marriott's case,* "that when a statute confers a power upon a corporation to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words 'power and authority,'" in such case, may be constructed duty and obligation." 9 Md. p. 174.

*David W. Sloan* and *A. A. Doub,* for the appellee.

Two classes of powers are granted to the corporation of Frostburg, one "to provide for the comfort, good order, health and safety of the town, and of the people and property therein," and the other "to remove nuisances and obstructions from the streets, lanes and alley, and from adjoining lots," and the right of the plaintiff to recover in this case must come from a failure on the part of the corporate

authorities to exercise one or other of these powers.   It cannot be maintained that the running at large of cattle upon the streets of the town is a nuisance as defined by the charter of Frostburg.   The running at large of cattle upon public highways is not a common nuisance, because it is authorized in this State by the common law.   " Nothing is a public nuisance which the law, either common or statute, authorizes."   *Cooley's Const. Limitations*, p. 741, note 2.

If the municipality should assume to declare something which was entirely lawful by the laws of a State to be a nuisance, the declaration would be a mere nullity, because in conflict with the superior law.   *Cooley's Const. Limitations*, p. 741, note 2.

A charter which confers upon the common council full power and authority to remove and abate any nuisance injurious to public health or safety, etc., does not confer upon the council the exclusive jurisdiction to determine what constitutes a nuisance, but only authorizes the abatement of that which is in fact a common nuisance.   Unless a nuisance as defined by the common law or statute exists, the act of the common council can not make it one by mere resolution.   *Hennessey* v. *St. Paul*, 37 Fed. Rep. 565 ; 1 *Dillon's Municipal Corporations*, sec. 374, note.   Power conferred on municipal corporations to enact such ordinances as it shall deem necessary for the well-regulation, interest, health, cleanliness, convenience and advantage of the corporation, and to require and compel the abatement of nuisances, does not authorize the municipality to pass an ordinance prohibiting swine, cattle, horses and so forth from running at large in contravention of the general law of the State, which allows such animals to run at large.   It is the practice expressly to grant power to towns corporate to do what in this case has been attempted to be done.   Such being the practice, it is right to presume where this is not expressly granted, it was intended it should not be exercised.   *Collins* v. *Hatch*, 18 Ohio, 523.

Where a city council passed an ordinance forbidding the

running at large of cattle in its streets, and subsequently suspended its operation, one who is gored by a cow running at large has no cause of action against the city. *Rivers* v. *Augusta*, 65 Ga. 376; *Dillon on Mun. Corp.*, sec. 950.

Municipal corporations are not liable for failure to pass ordinances which are discretionary, but are liable if the duty is a ministerial one, for the omission in the first case would transfer the discretion from the body to which the law has committed it to Courts and juries. *Wilson* v. *New York*, 1 Denio, 595. "It has never been established, and cannot be held, that a hog or other animal running at large is a nuisance in the legal sense of that term. * * * * * The only correct conclusion seems to be, that although such animals may occasion inconvenience and annoyance by running at large, yet they are not *per se* nuisances, but are subject only to such regulation as municipal authorities may determine." *Kelley* v. *City of Milwaukee*, 18 Wis. 86.

BOYD, J., delivered the opinion of the Court.

The appellant sued the appellee for injuries sustained by her being horned, tossed, thrown down and trampled upon by a cow, which attacked her while she was walking along a lane or street of Frostburg. The defendant demurred to the declaration, and the demurrer was sustained by the Court below and judgment entered for the defendant. From that judgment this appeal was taken, and we are therefore to inquire into the legal sufficiency of the declaration and determine whether the facts therein stated, which are admitted by the demurrer, give the plaintiff a right of action.

It is alleged that the defendant was, by its charter, vested with control over all the streets, lanes and alleys of Frostburg, and with full power to provide, by the passage and enforcement of ordinance, for the comfort, good order, health and safety of all the inhabitants of said town, residing within the limits and passing along and over its streets, lanes and alleys, and with power to prevent and remove all nuisances in said town, and to shield and protect said inhabitants there-

from ; that the said town is laid off into streets and alleys, contains between four and five thousand inhabitants, and is compactly built, so that there is a great deal of travel and walking on said streets and alleys.

It is further averred that large numbers of horses, cows, hogs and horned cattle were turned loose and permitted to run at large upon the streets unattended during the day and night, by means of which "said stock, and particularly said cows (they being armed with dangerous horns and equipped with annoying bells), became a common nuisance and a source of great annoyance and danger to persons passing along said streets and alleys, and particularly so as to women and children, who were attacked and frightened by said stock, whereby the safety and comfort of the inhabitants and the good order of said town were destroyed, and whereby the same became and (at the time of the grievances hereinafter set out) was a common and notorious nuisance and a constant source of dangerous discomfort to the inhabitants of said town."

It is then charged that, by reason of the powers contained in the charter, it became the duty of the defendant to pass and enforce ordinances to abate and prevent said nuisance, and to prevent said animals from running at large and require their owners to keep them off the streets, unless attended by some person in charge thereof ; but that the defendant, unmindful of its duty, negligently and wrongfully failed and refused to pass any such ordinances for the preventing and abating said nuisance, and negligently, wilfully and wrongfully refused to take any steps whatever to prevent said stock and troublesome and dangerous animals from running at large on said streets, and that while said nuisance still continued, plaintiff was walking on a street or lane of said city, using due care and caution, and was attacked by one of the said cows and horned cattle so by the said defendant negligently and wrongfully allowed and permitted to be at large upon the said streets, and was violently horned, tossed, thrown and trampled upon, etc.

The injuries sustained by plaintiff are then set out in detail, showing that both of her arms were broken, her side torn and that she was otherwise seriously and permanently injured.

If the defendant can be held responsible in any case to one lawfully using its streets for injuries inflicted by a cow running at large, the allegations in this declaration are certainly sufficient to entitle the plaintiff to recover, if she can sustain them by competent proof. In determining whether the defendant is so liable, we will consider:

1. Has the Mayor and City Council of Frostburg power under its charter to prevent stock from running at large within the corporate limits?

2. If it has such power, what are the consequences of its neglect or failure to do so?

Art. 2, sec. 144 of the Code of Public Local Laws, authorizes the Mayor and City Council of Frostburg to pass such ordinances, not contrary to law, as they may deem beneficial to the town; gives them power to remove nuisances and obstructions upon the streets, lanes and alleys, and to ordain and enforce all ordinances, rules and regulations necessary for the *peace, good order, health and safety* of the town and of the people and property therein, and authorizes them to impose fines, forfeitures or imprisonment for the violation of any ordinances of the town.

These powers are in substance the same as those of the charter of the city of Cumberland, which were passed upon in the case of *Taylor* v. *Mayor, etc., of Cumberland,* 64 Md. 68. This Court there held that the defendant was authorized and required under its charter to prevent persons from coasting on the streets, if it could do so by ordinary and reasonable care and diligence, and declared such use of the streets to be a nuisance. There was no special authority given in the charter of Cumberland to prevent coasting on the streets, but the power of the city to do so was not only not questioned, but was expressly recognized in that case. If a municipality can, without express powers in its charter,

prohibit the use of its streets for coasting, why should it not have the power to prohibit the use of them by horses, cows, hogs and horned animals, "during both the night and in day-time, and at all times, and on Sundays," as it is alleged in the declaration, especially when the cows are "armed with dangerous horns and equipped with annoying bells?" It is difficult to imagine a condition of things more calculated to injuriously affect, if not destroy, "the peace, good order, health and safety of the town and of the people and property therein," than that described in the declaration.

It is true that the decisions are not uniform as to whether what is called "the general welfare clause," usually contained in charters, authorizes municipal corporations to restrain domestic animals from running at large, but many of them so hold. *See* 15 *Am. and Eng. Ency. of Law*, 1188 and note, where a number of them will be found collected together.

There can be no good reason assigned why it should not, unless there be some statute law or some other provision of the charter inconsistent with such construction. In those cases in which it is held that municipal corporations cannot, without special authority, pass and enforce ordinances of this character, it will generally be found upon examination of them, that it is by reason of some statute or other special cause that would not apply to the case under consideration. For example, in the case of *Collins* v. *Hatch*, 18 Ohio, 523, so much relied on by the learned counsel for the appellee, the Court said that an ordinance to restrain horses, cattle, swine, etc., from running at large could not be adopted under the general welfare clause, as it would be in contravention of the general laws of that State, which allowed such animals to run at large. Is it to be said that the owners of horses, cows and other animals can turn them loose in the public streets of a town such as described in the declaration, and the authorities have no means to prevent it, unless the Legislature has given them express

power?   It is not necessary to determine whether domestic animals can be *impounded and forfeited* without express authority being given in the charter, but with powers as broad as those in the charter of defendant, there would seem to be no valid reason why it could not pass and enforce ordinances prohibiting stock from running at large and imposing penalties for the violation of them.   If the owners of cows and horses tied them along the public streets of Frostburg, so as to interfere with the free passage of people having the right to use the streets, it could not be successfully contended that the authorities were without remedy.   Why, then, should they be permitted to turn them loose, thereby not only obstructing the free and proper use of the streets, but permitting them to wander over the sidewalks, to frighten and possibly injure women and children.

It was contended by the appellee that it is customary in this State to grant special powers to such municipal corporations as desired to prevent stock from running at large, and hence, when it is omitted from a charter, the presumption is that it was not intended by the Legislature that such power should be exercised.   We do not think that such a conclusion can properly be drawn.   Various reasons might be given for such omission.   Some of those municipalities may have been so disturbed by animals running at large, that they wanted to emphasize that power to restrain them, or they may have thought it safest to include such powers to avoid any question.

In the brief for appellee certain towns are named which have the power expressly granted them to prevent cattle from running at large, and it is stated that Hagerstown, Frederick and others have no such powers conferred on them.   It would seem to be a most unreasonable construction to place upon the action of the Legislature, to say that, inasmuch as it has granted this express power to some towns of the State, but has omitted it in the charters of Hagerstown and Frederick, therefore these two cities, which are among the largest in the State, were intended by the

Legislature to be prohibited from exercising such powers.
There may be no such provision in the charter of Baltimore
City, yet it would scarcely be claimed that it could not pro-
hibit stock from running at large under the general powers
vested in it.

The object of such a provision, as the general welfare
clause, is to cover those cases not specifically designated.
It would be impossible to enumerate in detail, in a charter
of ordinary length, all the powers that a corporation could
exercise.   The very effort to name them all might exclude
some that were omitted, but would have been authorized
under the general welfare clause if an attempt had not been
made to itemize them.   We think it clear that the defen-
dant has the power under its charter to pass and enforce
ordinances to prevent stock from running at large within its
limits, and that the condition of affairs described in the
declaration is a nuisance of such character as should be
abated for the peace, good order and safety of the people
and property of the town.

It becomes necessary, therefore, to consider the second
inquiry above suggested, namely, what are the conse-
quences of the neglect or failure of the defendant to exer-
cise its powers.   We have been referred to a number of
authorities outside of this State, to the effect that a
municipality is not liable for the injuries sustained by rea-
son of its failure to abate a nuisance, although it has
power to do so.   But that is no longer an open question
in this State.   It was said in *Marriott's case*, 9 Md. 174, that
when a statute conferred a power upon a corporation to be
exercised for the public good, the exercise of the power is
not merely discretionary, but imperative, and the words
" power and authority," in such case, may be construed
" duty and obligation."   It was there held that the city of
Baltimore was required to pass ordinances sufficient to reach
the exigencies of the case, and was bound to see that they
were enforced.   MASON, J., in delivering the opinion in that
case, said:  " The people of Baltimore, in accepting the privi-

leges and advantages conferred by their charter, took them subject to the burthens and restrictions which were made to accompany them under the same charter. One of those burthens was the obligation to keep the city free from nuisances. A disregard of the obligations thus imposed would be attended with the same consequences which would result to the individual at common law, were he to disregard his obligations to the community in these particulars. As the duty is the same in a corporation as an individual, so are the consequences the same for its disregard." On page 175 the Court quotes with approval from case of *Pittsburg* v. *Grier*, 22 Pa. 65, that " It is no matter whether that duty (removing a nuisance) remains unperformed, because it had no ordinances on the subject, or because, having ordinances, it neglected to enforce them. The responsibilities of a corporation are the same in either case."

In *Taylor's case*, *supra*, it was held that the corporation was under an obligation to exercise for the public good the powers conferred on it by its charter, to prevent nuisances and to protect persons and property. So, whatever may be the law elsewhere, it is well settled in this State that a corporation, having such powers, must exercise them, and is ordinarily liable for its failure to do so to any person who has received special damage therefrom, who is not himself in fault. Of course, as was said in *Taylor's case*, if it use ordinary and reasonable care and diligence to prevent the nuisance, its duty is discharged and it is relieved from responsibility, and a vigorous effort to enforce its ordinance on the subject would fulfill its duty in this respect.

The declaration alleges that defendant " negligently and wrongfully failed and refused to pass any such ordinances for preventing and abating said nuisance, and negligently, wilfully and wrongfully refused to take any steps whatever to prevent said stock and troublesome and dangerous animals from running at large on said street." Now, if it be true, as is alleged in the declaration and admitted by the demurrer, that women and children had been attacked and

frightened by these animals thus running at large in the streets, it would seem clear that it was the duty of the defendant to take some steps to prevent it. It is certainly its duty to prevent such a condition of affairs as is described in the declaration.

But the main difficulty in this case is to determine how far the defendant is responsible for such an injury as that complained of by plaintiff. It is well settled that the owner of a domestic animal is ordinarily not responsible for injuries inflicted by it, unless it is of a ferocious or vicious disposition, accustomed to bite or attack mankind, and he knows that it has such disposition or vicious propensity. " The gist of the action is the keeping of the animal after knowledge of its mischievous propensities," and it is incumbent upon the owner to see that no injury is done by it. There is another class of cases in which owners have been held liable, without proving knowledge by them, on the ground that the animals were wrongfully in the places where they did the mischief. It has, for example, been held that the owner of a horse, who permits it to go at large in the streets of a populous city, is answerable for a personal injury done by it to an individual without proof that he knows the horse is vicious. The owner had no right to turn the horse loose in the streets. *Goodman* v. *Gay*, 15 Pa. St. 188; *Decker* v. *Gammon*, 44 Maine, 322; *Dickson* v. *McKoy*, 39 N. Y. 400; *Barnes* v. *Chapin*, 4 Allen, 444. This last case places the liability on the ground that the owner was in fault in permitting his mare to go at large on the highway without a keeper. See also *Mosier* v. *Beale*, 43 Fed. Rep. 358, in which it was held that in an action for personal injury caused by defendant's cow, it was not necessary to allege *scienter* when it is alleged that the injury is committed while the cow was negligently permitted by defendant to trespass on plaintiff's premises. In the case now under consideration, if the owner of the cow negligently or wilfully permitted her to go at large on the streets of Frostburg, he was in fault and was liable for injuries done by her to persons lawfully using

the streets.  Let us therefore apply these principles and determine how far the defendant is liable.   We have already said that the defendant had the power, and it was its duty to prevent such a condition of affairs as the declaration alleges existed at the time of the injury.   Of course, the ringing of cow bells, frightening women and children and other things alleged, which were annoying and injurious to the public at large, do not give the plaintiff a right of action, as she can only recover, if at all, for *special* injuries sustained by her.   Those *special injuries* were not sustained by the ringing of cow bells, etc., but by the attack of this particular cow.   These other matters are relevant, however, to our inquiry, because they are of such character as must likely have brought this nuisance to the attention of the authorities, and hence reflects upon their duty to abate the nuisance.   In *Taylor's case* it would not have been contended that if the sled which struck him had been the only one coasting on the streets of Cumberland, the defendant would have been liable.   It was because coasting had been carried on to such an extent that the city authorities were called upon to stop it as a nuisance and something dangerous to those lawfully using the streets.   So in this case, if horses, cows, hogs and horned cattle were permitted by the town authorities to run at large as alleged in the declaration, they were called upon to put a stop to it.   If, however, this cow that injured the plaintiff was on the street without any fault of the owner, then no blame can attach to the defendant and it would not be liable, for it would not do to hold a municipal corporation to a stricter liability for injuries done by domestic animals than the owners themselves would be held to.   Nor would the defendant be liable, unless it could have prevented this cow from running at large by the use of ordinary care and diligence.   If the cow was at such a place and for such short time, as it could not have been discovered by the defendant's officers by the use of reasonable care and diligence, before it attacked plaintiff, then the defendant would not be liable, unless the cow's

running at large can be attributed to the failure of defendant to pass and enforce ordinances to prevent stock from running at large.   Of course, if the plaintiff is shown to be in fault, another defence would arise.   Whether or not the plaintiff can prove such facts as will entitle her to recover, can only be determined at a trial of the case, but we think the allegations in the declaration are sufficient to require the defendant to plead, and therefore the demurrer should have been overruled.   For these reasons we must reverse the judgment.

> *Judgment reversed and new trial awarded.*