**880**

Anna JENNINGS, Administratrix of the Estate of Stewart Earl Jennings, deceased; State of Maryland, to use of Anna Jennings, surviving wife, Anna Frances Jennings, a minor, Russell Earl Jennings, a minor, Gregory Stewart Jennings, a minor, and the unborn child or children, en ventre sa mere, of Stewart Jennings; Margaret M. Jennings, in her own right as mother and next friend of Donald S. Jennings and Donald S. Jennings in his right, Appellants and Cross-Appellees,

v.

UNITED STATES of America, Appellee and Cross-Appellant.

No. 8117.

United States Court of Appeals Fourth Circuit.

Argued Oct. 11, 1960.

Decided May 4, 1961.

David L. Rose, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Leon H. A. Pierson, U. S. Atty., Baltimore, Md., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee and cross-appellant.

Paul R. Connolly, Jr., Washington, D. C. (David N. Webster, and Hogan & Hartson, Washington, D. C., on brief), for appellants and cross-appellees.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and STANLEY, District Judge.

HAYNSWORTH, Circuit Judge.

The tragedy out of which these cases arose occurred in Maryland on a highway constructed and maintained by the United States Government. On the morning of January 23, 1956, Stewart Earl Jennings, a civilian employee of the United States, was driving his automobile from his home in Maryland to his place of work in the District of Columbia. Stewart's brother, Donald S. Jennings, was a passenger in the car. At about 7:30 a. m., while driving on Suitland Parkway in Maryland, a highway under the control of the National Capital Park Bureau, Department of the Interior, Stewart's automobile skidded on a patch of ice on the road, went out of control, and collided with an oncoming automobile in the opposite lane of traffic. Stewart Jennings was killed and his brother, Donald, was seriously injured.

Thereafter, based upon the alleged negligence of the United States, three suits were filed under the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2674, in the United States District Court for the District of Maryland. The Administratrix of Stewart Jennings' estate brought an action for Stewart's conscious pain and suffering before death, for loss of his automobile, and for funeral and burial expenses. An action was also brought to the use of Stewart's widow and four children under the Maryland Lord Campbell's Act, Code 1957, art. 67, § 1 et seq., for damages resulting from his alleged wrongful death. There was a third suit based on the injuries suffered by Stewart's brother, Donald Jennings.

In a lengthy trial, much evidence was presented bearing on the construction of the road at the particular place, the weather conditions preceding the time of the accident, the driving hazard at this point, the notice, actual or constructive, chargeable to the Government of the existence of the ice, the alleged con-

tributory negligence of Stewart Jennings, and the amount of damages. The District Judge found the Government negligent and Stewart Jennings free from contributory negligence. The detailed evidence relating to these questions, together with the findings of the District Judge, are set forth in the Judge's comprehensive opinion. Jennings v. United States, D.C.Md.1959, 178 F.Supp. 516. Damages in the sum of $850 were awarded in the Administratrix's suit, $83,700 in the wrongful death action, and $21,978 in favor of Donald Jennings. The plaintiffs have appealed, contending that in several respects the District Court erroneously calculated damages, and the Government has cross-appealed, raising issues of liability and contributory negligence, and it also attacks the computation of damages.

The principal issue is raised by the Government and concerns the extent of a defendant's liability for injuries caused by icy conditions on a roadway under its control. As the accident happened in Maryland, the law of that state is to be applied.

Suitland Parkway, built by the United States Army Engineers in 1944 as a military highway, runs in a generally east-west direction from Andrews Air Force Base on the East to South Capital Street in the District of Columbia on the West. On that portion of it where the accident occurred it has a concrete surface providing two traffic lanes, one for traffic moving in each direction. As modern highways are, it is banked on curves and, at the point where the accident occurred, there is a slight curve so that the northern edge of the highway is slightly higher than the southern edge. Necessarily, water from melting ice and snow piled on the shoulder of the high side of the roadway will drain across the highway surface.

On Thursday, January 19, 1956, there had been a heavy snow. Plows had re-moved the snow from most of the road surface, piling it up on the edges of the road and on the shoulders. Sunday, January 22, was warm and the accumulated snow and ice was melting. In many places, water from melting snow was draining across the roadway. The thawing conditions continued in general throughout the night of the 22nd–23rd. The official temperatures at the Washington National Airport show that the temperature fell on the afternoon and evening of the 22nd from a high of 46° F. at 3:00 o'clock in the afternoon to 37° F. at midnight.[1] The reading was 36° F. at 1:00 a. m. and at 2:00 a. m. on the morning of the 23rd. It dropped to a low of 35° at 3:00 a. m., and was back up to 37° at 4:00 a. m. on that morning. It was again 36° at 5:00 o'clock and at 6:00 o'clock, and climbed again to 37° at 7:00 o'clock, and that reading was also recorded at 8:00 o'clock. The temperature fell again to 35° at 9:00 o'clock and to 32° at 10:00 o'clock on the morning of the 23rd.

Despite the fact that the official records indicated that the temperatures at the Washington National Airport were above freezing throughout the night of January 22–23, one witness testified that between 10:00 and 11:00 o'clock on the evening of the 22nd, he saw a patch of ice at an unspecified point on the highway and felt his rear wheels slip as he passed over it. One of the officers who patrolled the highway that night felt his wheels spin when he passed over what he supposed to be patches of ice while on his way to work, but he testified that when he looked for it later, while on his official patrols, he found no ice. Mrs. Jennings' brother and sister, in separate automobiles, each testified that a patch of ice was encountered on the parkway around midnight. A number of witnesses traveling on the highway between approximately 6:00 o'clock and 7:30 o'clock on the morning of the 23rd testified that they saw or felt themselves passing over a patch of

1. The readings were actually taken at approximately twenty minutes after the hour.

ice at a point approximately seven-tenths of a mile east of Forestville Road, the point where the accident occurred. There was no specific testimony that ice was at that particular place at an earlier hour. Unquestionably, there was a patch of ice on the roadway, observed by many witnesses, shortly after the accident. One of the officers investigating the accident called for sand, but, inexplicably, when the sand truck arrived at approximately 8:15 o'clock there was no longer any ice though the surface of the highway was wet from the melting snow, and though the official weather reports indicate that the temperatures were falling after 8:00 o'clock that morning and reached 32° F. by 10:00 o'clock.

Suitland Parkway is maintained by the National Capital Park Bureau. The officers on duty on the night of January 22–23, including the one who thought from the feel of his wheels that he had passed over patches of ice on his way to work prior to 11:00 o'clock on the evening of the 22nd, testified that they encountered no ice on their patrols, though they were looking for it and though they made some six or seven round trips over the entire length of the highway during the night. There were two places, not the scene of the accident, one at the intersection of an access road and another where there was an overpass, which they thought prone to become icy when the rest of the roadway was unfrozen. Those two places they particularly checked, and at one of them one of the officers got out of the car to make certain by the feel of his foot that the substance on the roadway was indeed water and not ice.

Throughout the night of January 22–23, as on other similar nights in the wintertime, there was a loaded sand truck available on call to sand the roadway in the event of icing. The sand truck could have been summoned by the patrolling officers by use of their radio, but the official log disclosed no request for sand and the patrolling officers testified they requested no sand, for they encountered no ice.

Nevertheless, and though there was only water on the roadway, shortly after 8:00 o'clock, as we have indicated, there clearly was a patch of ice on the roadway at or near the point where Stewart Jennings lost control of his automobile at approximately 7:30 o'clock on the morning of the 23rd, with the result that there was a head-on collision with a vehicle proceeding in the opposite direction.

The District Judge found that the patch of ice, observed by many witnesses during the early hours of daylight on the 23rd, had formed sometime prior to midnight. He concluded that it was a dangerous condition which the patrolling officers discovered, or should have discovered, and that they should have taken steps to mitigate the danger it posed for traveling motorists. Since they had done nothing to eliminate the condition, he held that the United States was liable for the resultant injuries under the Tort Claims Act.

■ The principle that a municipality is bound to abate nuisances in the highways under its control if it knows of them, or should have known of them, has been applied with a soft hand by the Maryland courts to snow and ice. As he indicates in his concurring opinion, Chief Judge Soberoff construes the Maryland cases to impose absolutely no duty upon a municipality to remove even occasional ice or snow from a highway under its control, to sand it or to warn of its presence, unless its presence is attributable, at least in part, to some other fault or wrong of the municipality. As we read the Maryland cases, they do not go that far, but the Courts of that state have certainly been careful to impose no unreasonable burden upon municipalities with respect to the prevention or removal of natural snow or ice.

In the early case of Mayor and City Council of Baltimore v. Marriott, 1856, 9 Md. 160, 66 Am.Dec. 326, it was established that the City permitted ice to remain upon a sidewalk for a long time. A pedestrian slipped upon it and injured

himself. The municipality was held responsible because the condition amounted to a nuisance which the municipality should have abated.

The duty of municipalities to remove snow and ice from sidewalks has been imposed in Maryland against a background of a municipality's power to require the occupants of adjacent land to effect the removal of snow and ice from the sidewalks. Under such ordinances, the municipality, itself, is required only to remove snow and ice which the occupant of the adjacent land neglects to remove after a reasonable time, and this activity of the municipality may be done at the expense of the occupant who is required by the ordinance to clear the sidewalk.

With respect to ice and snow in the streets, however, the Maryland courts have imposed no duty upon municipalities to remove general ice or snow, for to do so, they have thought, would have imposed unreasonable burdens upon the municipality. In Magaha v. Mayor, etc., of City of Hagerstown, 1902, 95 Md. 62, 51 A. 832, 835, the Court of Appeals of Maryland declared emphatically:

> " * * * In order that we may not be misunderstood, we desire to emphasize the fact, at the risk of repetition, that we do not mean to say that the appellee (a municipality) would be liable if this ice was simply the result of snow or rain, or both, falling and then freezing. If it had been, and if the ice thereby formed was in large quantities in the streets, it would be exacting too much to require the municipal authorities to remove it. * * * "

The case of Flynn v. Canton Co. of Baltimore, 1874, 40 Md. 312, 17 Am.Rep.

603, did not involve the liabilities of a municipality. The plaintiff there had slipped upon ice on a sidewalk in front of a market operated by the defendant. The suit was brought against the merchant on the theory that the city ordinance requiring the occupant of the store to remove ice from the sidewalk created a duty running to the general public. The court held, however, that the duty imposed by the ordinance upon the merchant ran only to the city, enforceable only by penalty or by exercise of the city's right to remove the snow and ice and to charge the storekeeper for the cost of the work.[2] Once the court concluded that the city ordinance imposed upon the occupant of the adjacent land no duty of care with respect to ice on the sidewalk running to passers-by using the sidewalk, there was no basis for imposing any civil liability upon the storekeeper for the injury sustained by the pedestrian unless, of course, the storekeeper had caused the ice to be present. Once the city ordinance was eliminated as a basis for recovery by the pedestrian, there remained no basis for imposing civil liability upon the occupant of adjacent land for ice or snow in a public way not under his control to any greater extent than there would be for any other defect in a highway adjacent to the occupant's land.[3]

The holding that the occupant of adjacent land may not be held liable for injuries sustained by a member of the public using the public highway not under the control of the land occupant neither requires nor suggests the conclusion that a municipality which does have control of the highway in which a defect is permitted to exist for an unreasonable period of time may not be held civilly liable if injuries are sustained because of the defect. With re-

---

2. Similar ordinances have received a similar construction. See, for instance, Smith v. District of Columbia, 89 U.S. App.D.C. 7, 189 F.2d 671, 39 A.L.R. 2d 773.

3. Generally, the occupant of land has no duty to remove or warn the public of defects in a public highway adjacent to the land he occupies when the highway is neither maintained by him nor under his control, unless he creates the defect. See Restatement of Torts, § 349.

spect to defects other than ice and snow, such liabilities are imposed in Maryland upon municipalities having control of the highways, though there would be no basis for imposing any such liability upon the occupant of adjacent land.[4] The duties of a municipality with respect to ice and snow in the streets it maintains are not to be measured by the duties of adjacent landowners with respect to defects in the highways which they do not maintain and for which they are not responsible.

That a municipality in Maryland does have some duty with respect to occasional ice and snow in the streets it maintains appears to have been the clear holding in Magaha v. Mayor, etc., of City of Hagerstown, 1902, 95 Md. 62, 51 A. 832, a case subsequent to Flynn. There it appeared that ice had been formed of water discharged in the street from a saloon. Though the ice had been present for a long time the municipality made no effort to do anything about it. The court concluded that the long existing patch of ice in the street was a nuisance, and that the municipality was liable to the plaintiff for the damages he sustained when he was injured on the ice. It may be that the saloon keeper could also have been held responsible for the plaintiff's injuries, for he discharged the water into the street, which, freezing, created the ice, but there is nothing in the case to suggest that an innocent occupant of adjacent land could have been held liable for the saloon keeper's conduct, or for the municipality's neglect over a long period to do anything to abate the nuisance. Maryland's Court of Appeals seems to have been applying the usual rule with respect to defects in a public way permitted to remain for such length of time as to become a nuisance, for, with respect to this isolated patch of ice, the burden resulting from imposition of a duty of abatement was slight, thus distinguishing that case from the general rule that Maryland municipalities need do nothing about general ice or snow.

Under the Maryland cases, the municipality is not required to do the impossible, to prevent snow from falling in the streets, as the court observed in Magaha, or even the very onerous. It is required to do what is reasonable and not burdensome to it. It need not remove general snow, but it may be required to remove, sand or warn an unsuspecting public of, a lone and isolated patch of ice long remaining in a public street, depending, in each instance, upon reasonableness.

Though we think the Maryland cases do not require a conclusion that a municipality need do nothing at any time about occasional ice or snow naturally formed in its streets, the duties imposed with respect to ice or snow in the roadway, as distinguished from sidewalks

4. Mayor & City Council of Baltimore v. Pendleton, 1860, 15 Md. 12; Anne Arundel County Commissioners v. Duckett, 1864, 20 Md. 468; Eyler v. Allegany County Commissioners, 1878, 49 Md. 257; Taylor v. Mayor, etc., of the City of Cumberland, 1885, 64 Md. 68, 20 A. 1027; Hitchins v. Town of Frostburg, 1887, 68 Md. 100, 11 A. 826; Cochrane v. Mayor, etc., of City or Frostburgh, 1895, 81 Md. 54, 31 A. 703, 27 L.R.A. 728; Keen v. Mayor, etc., of City of Havre de Grace, 1901, 93 Md. 34, 48 A. 444; Mayor, etc., of City of Hagerstown v. Klotz, 1901, 93 Md. 437, 49 A. 836, 54 L.R.A. 940; Mayor, etc., of Baltimore City v. Beck, 1903, 96 Md. 183, 53 A. 976; Mayor and City Council of City of Havre de Grace v. Fletcher, 1910, 112 Md. 562, 77 A. 114; Mayor, Counselor, and Aldermen of City of Annapolis v. Stallings, 1915, 125 Md. 343, 93 A. 974; Commissioners of Delmar v. Venables, 1915, 125 Md. 471, 94 A. 89; Mayor, etc., of City of Hagerstown v. Crowl, 1916, 128 Md. 556, 97 A. 544; Mayor, etc., of Baltimore v. Bassett, 1918, 132 Md. 427, 104 A. 39; County Commissioners of Washington County v. Gaylor, 1922, 140 Md. 375, 117 A. 864; Mayor and City Council of Baltimore v. Eagers, 1934, 167 Md. 128, 173 A. 56; Mayor and City Council of Baltimore v. Thompson, 1937, 171 Md. 460, 189 A. 822; Neuenschwander v. Washington Suburban Sanitary Commission, 1946, 187 Md. 67, 48 A.2d 593; East Coast Freight Lines, Inc. v. Mayor & City Council of Baltimore, 1948, 190 Md. 256, 58 A.2d 290, 2 A.L.R.2d 386.

which occupants of adjacent land may be required to clear, are minimal. The courts of that state have clearly indicated that the public should suffer the inconvenience and danger of ice and snow in the streets rather than having the municipalities burdened with duties of large and expensive operations to remove it.

■■ Though nothing in the Maryland law required it do so, the United States did remove the general snow of January 19, 1956 from most of the surface of the roadway, piling it on the edges of the road and on the shoulders. No one suggests that this substantial clearance of the highway required the United States to go further and remove the piles of snow from the edges of the road and from the shoulders or to take other steps to prevent drainage across the road from the piles of snow on the edges and shoulders, particularly snow on the high side of the banked curves.[5] It was required only to inspect the road at reasonable intervals and to sand occasional patches of ice, or take other reasonable steps to diminish their danger, within a reasonable time after they were discovered or reported.

■ The United States did all that was required of it and more. It patrolled the highway at frequent intervals throughout the day and night. It maintained a loaded sand truck so that it might promptly respond at any hour to a call for sand. Except at the one place where one patrolman got out of the car to feel the surface of the road with his feet, the patrolmen did not examine the surface of the road more closely than could be done from their moving car. Bearing in mind the thawing conditions and the official temperature reports, however, no basis appears for a finding that due care required closer or more frequent inspections.

In those Maryland cases in which occasional ice on sidewalks or in the streets has been held to be a nuisance which the municipality should have abated, the ice had been present for many days. Here, in contrast, the ice had formed only a few hours before the accident. The accident occurred shortly after daybreak. The fact that the ice was neither reported nor discovered during the early morning hours of darkness, under the conditions then prevailing, does not lead to the conclusion that the United States should have taken additional precautions. Maryland's leniency with municipalities in snow and ice cases is not consistent with a requirement that occasional ice, naturally formed, must be discovered and dealt with under these circumstances in so short a period of time.

We conclude that proof of the presence of the patch of ice that morning and of the fact that Jennings' car skidded upon it was not enough to support the judgment. There was other evidence, however, which might support recovery upon a different theory.

There was testimony that the roadway at this point is in a shallow cut and that beyond the northern shoulder of the highway was a slight swale or drainage ditch, constructed apparently for the purpose of diverting from the roadway water draining down the embankment. There was testimony that the swale was inadequate for that purpose, and, at least, a suggestion that the water on the roadway came not from the snow piled on the edge of the roadway and the shoulders, but from the embankment on the other side of the swale. The testimony about the construction and condition of the swale was accepted by the District Court only for the purpose of showing notice to the United States that water might be expected to drain across the roadway at this particular point and, in

---

5. Unlike some other jurisdictions, Maryland imposes no greater liabilities upon municipalities for man-made piles of natural snow and ice than for ice and snow in their natural states. See Magaha v. Mayor, etc., of City of Hagerstown, 1902, 95 Md. 62, 51 A. 832.

freezing weather, to freeze. He made no findings, and none were requested of him, as to what, if any, contribution the condition of the swale made to the formation of the ice patch with which we are concerned.

Though there was testimony that water was draining across the highway at many places,[6] the plaintiffs' testimony may be susceptible of an inference that water drained across the roadway only at this particular place and at no other, and that the condition of the swale was the cause of the drainage.

If it were the fact that because of the condition of the swale water drained across the roadway at this particular point, forming ice during freezing conditions, and that the patch of ice on the particular morning was attributable to that condition, it might be concluded that the United States in the exercise of due care should have deepened the swale to eliminate the drainage across the roadway and the formation of dangerous ice whenever thawing conditions were followed by freezing temperatures.

■ In Maryland it has been held that there is no liability for injuries caused by a design defect in a highway,[7] but if a defect, whether of design or not, creates a condition which would itself constitute a nuisance, reasonable care to abate it is not exercised and the condition is the effective cause of the injury, no reason presently appears why the agency charged with maintenance of the highway should not be responsible as for any other nuisance it unreasonably permitted to exist.

■ The District Court has made no findings on the subject. Until the District Judge has sifted the proof heard by him, we need not consider its sufficiency to support hypothetical findings, or decide whether any hypothetical findings would be sufficient to bring the plaintiff within the rule permitting recovery on the theory that the swale created a nuisance which the United States in the exercise of due care should have abated, and that this nuisance was the cause of the accident. Instead, we think it appropriate to remand the case to the District Court for further proceedings and additional findings of fact, with leave, in his discretion, to receive additional testimony bearing upon the remaining questions.

■■ In its cross-appeal the Government also maintains that under the evidence Stewart Jennings was, as a matter of law, contributorily negligent. The issue of contributory negligence is normally for the trier of the facts, and, upon the evidence in this case, we cannot say that the District Judge was clearly wrong in finding Jennings' conduct free of negligence. See: Magaha v. Mayor, etc., of City of Hagerstown, 1902, 95 Md. 62, 51 A. 832; Canton Co. of Baltimore v. Seal, 1923, 144 Md. 174, 125 A. 63.

■ Additionally, two questions relating to damages are raised by the United States. First, it is asserted that the Civil Service Retirement Act, 5 U.S.C.A. § 691 et seq., benefits received by Stewart Jennings' dependents after his death should have been taken into consideration in determining damages in the wrongful death action. In United States v. Price, 4 Cir., 1961, 288 F.2d 448, we recently held that these civil service benefits are from a "collateral source," and, therefore, under the law of Virginia, should not be offset against a tort claims award. The Maryland cases also recognize the rule that benefits from a "collateral source" should not be considered in fixing damages in a tort action, Plank v. Summers, 1954, 203 Md. 552, 102 A.2d 262, and cases therein cited. Thus, it was no error to dis-

---

6. It would be expected to do that at every point at which snow was piled on the high side of the banked curve, and photographs made shortly after the accident show snow piled on the edge of the roadway and on the shoulders.

7. Mayor and City Council of Cumberland v. Turney, 1939, 177 Md. 297, 9 A.2d 561.

regard such benefits to Jennings' dependents.

The Government also insists that the District Court, in computing damages in the death action, should have deducted from the award prospective income taxes that the decedent would have had to pay on his future earnings. Without intending to express an opinion on the propriety of such deduction, we note that the District Judge stated that "the decedent's liability for taxes has been considered as one of the relevant elements in fixing the award." Since this item evidently was considered, the Government has no cause to complain.

Finally, the plaintiff's brief raised several questions relating to damages. While these were not pressed in oral argument, we have examined the contentions and find no reversible error.

For the reasons stated, the judgments appealed from are

Vacated and the case remanded for proceedings not inconsistent with this opinion.

SOBELOFF, Chief Judge (concurring).

If the court's opinion states the Maryland law correctly, then logically the case should be affirmed rather than remanded. If, in Maryland, a defendant may be liable for failing to remove or warn of ice, formed from solely natural causes, which remains on a roadway under his control long enough to constitute a nuisance, then the District Court's finding of negligence on the part of the Government should not be upset merely because an appellate court reaches a different factual conclusion. The District Court found that the ice remained on the roadway for a sufficient length of time to give the defendant notice and an opportunity to rectify the situation. This finding was supported by evidence and should not be upset merely because this court disagrees. However, I concur in the judgment of non-affirmance for different reasons. The Maryland decisions, in my view, do not attach tort liability to a defendant who fails to remove or warn of ice on a way if that ice was formed exclusively by the elements. This is simply not negligence as a matter of law.

One of the earliest and most frequently cited Maryland cases concerning the liability of a municipal corporation for the condition of its streets, and dealing specifically with snow and ice on a public way, is Mayor & City Council of Baltimore v. Marriott, 1856, 9 Md. 160. There ice had been permitted by the City to remain for a long time on a sidewalk and the plaintiff slipped and fell on it, thereby injuring himself. The Court of Appeals held that because the City had the statutory "power and authority" to prevent and remove nuisances, it had the same "duty and obligation" to prevent and remove them as a private individual at common law. It was further held that since the ice on the footway constituted a nuisance, and the City did not use reasonable care, and diligence to remove it, the plaintiff could recover.[1]

Marriott is probably the leading case in Maryland on the duty of municipalities and other organs of local government to prevent or abate nuisances. Its principle has been invoked to permit recovery for personal injury in a wide variety of situations.[2] On the other

1. See also The City of Providence v. Clapp, 1854, 17 How. (58 U.S.) 160, 15 L.Ed. 72, cited in Marriott.

2. See: Mayor & City Council of Baltimore v. Pendleton, 1860, 15 Md. 12 (plaintiff's horse fell into recently filled trench in street, the fill becoming soft because of snow); Anne Arundel County Commissioners v. Duckett, 1864, 20 Md. 468 (failure to keep streets in repair); Eyler v. Allegany County Commissioners, 1878, 49 Md. 257 (neglect in not repairing a bridge); Taylor v. Mayor, etc., of the City of Cumberland, 1885, 64 Md. 68, 20 A. 1027 (plaintiff injured by boys coasting with a sled on a street and City held liable for not preventing the nuisance); Hitchins v. Town of Frostburg,

hand, the Marriott doctrine has been limited by many decisions, not all, perhaps, entirely consistent with those applying the doctrine.[3]

If there were not later cases in Maryland dealing with accidents caused by snow, ice, or slippery conditions on a roadway or walkway, it would appear from the Marriott decision that if a defendant, whether an individual or a municipality, knew or should have known of such a condition on a way under his control, and did not take sufficient precautions to prevent it, he is liable. This would place an extremely heavy burden on persons and governmental bodies today, with the great number of streets and highways, the size of municipalities, the ever increasing volume of automobile travel, and the problems connected with snow and ice removal. Recognizing this, subsequent Maryland cases,

against both private individuals and municipalities, have limited a defendant's liability for snow, ice, or slippery conditions.

In Flynn v. Canton Co. of Baltimore, 1874, 40 Md. 312, the plaintiff slipped and fell upon ice on the sidewalk adjacent to the defendant's place of business. It was alleged that snow had fallen frequently from time to time prior to the accident, that the defendant did nothing to remove it from the pavement, and that some of the snow melted and the water thus formed had frozen the night before the accident. The court recognized "the well settled principle that whenever a party causes, constructs or creates a nuisance or obstruction in a public street or highway, he is responsible in damages to any one who has received special injury in consequence thereof." 40 Md. at page 326.[4] Yet the

1887, 68 Md. 100, 11 A. 826 (city liable for injury caused by negligently constructed sewer); Cochrane v. Mayor, etc. of City of Frostburg, 1895, 81 Md. 54, 31 A. 703, 27 L.R.A. 728 (plaintiff injured by a cow running at large on a street); Keen v. Mayor, etc., of City of Havre de Grace, 1901, 93 Md. 34, 48 A. 444 (plaintiff stumbled because of a hole in the sidewalk which had been there for three weeks); Mayor, etc., of City of Hagerstown v. Klotz, 1901, 93 Md. 437, 49 A. 836, 54 L.R.A. 940 (City failed to enforce ordinance preventing riding of bicycles above certain speed, and pedestrian was struck by speeding bicycle); Mayor, etc., of Baltimore City v. Beck, 1903, 96 Md. 183, 53 A. 976 (private individual left quantity of bricks on street without lights or other warning); Mayor, etc., of City of Havre de Grace v. Fletcher, 1910, 112 Md. 562, 77 A. 114 (City liable where beer kegs stacked near sidewalk so as to be dangerous to passerby); Mayor, etc., of City of Hagerstown v. Crowl, 1916, 128 Md. 556, 97 A. 544 (where building was being constructed along a sidewalk, and passerby struck by falling mortar, City held responsible for providing barricades); Mayor, etc., of Baltimore v. Bassett, 1918, 132 Md. 427, 104 A. 39 (hole in the street). See also: Mayor and City Council of Baltimore v. Eagers, 1934, 167 Md. 128, 173 A. 56; Mayor and City Council of Baltimore v. Thompson, 1937, 171 Md. 460, 189 A. 822; East Coast Freight Lines v. Mayor

and City Council of Baltimore, 1948, 190 Md. 256, 58 A.2d 290, 2 A.L.R.2d 386; 3 West's Maryland Law Encyclopedia, Automobiles, sections 301–309.

3. See, e. g.: Altvater v. Mayor and City Council, 1869, 31 Md. 462 (no recovery against City of Baltimore where plaintiff injured by sled speeding along street, as it is duty of police to abate such nuisances, and Baltimore City Police are no longer officers of the City but of the State); Taxicab Co. of Baltimore City v. Mayor, etc. of Baltimore, 1912, 118 Md. 359, 84 A. 548 (no recovery where injury caused by unlighted obstruction in street, as it is duty of police to abate this); Wynkoop v. Mayor and City Council of Hagerstown, 1930, 159 Md. 194, 150 A. 447 (doctrine of Marriott's case apparently confined to unsafe conditions of public streets and highways); County Com'rs of Harford County v. Love, 1938, 173 Md. 429, 196 A. 122 (no recovery for injury caused by negligently constructed and poorly lighted stairway in county courthouse). See also: State v. Rich, 1915, 126 Md. 643, 95 A. 956; Gutowski v. Mayor, etc., of City of Baltimore, 1916, 127 Md. 502, 96 A. 630; Cox v. Board of County Com'rs of Anne Arundel County, 1943, 181 Md. 428, 31 A.2d 179; Stottlemyer v. Groh, 1953, 201 Md. 414, 94 A.2d 449.

4. Also, there was a city ordinance which cast upon the defendant the duty to keep the pavement clear of snow and ice. The

Maryland Court of Appeals denied recovery saying:

"Here the nuisance, if such it be, was not caused or created by the act of the party sued. The ice, the occasion of the injury, was not on the property of the defendants, nor was it placed on the pavement through the slightest instrumentality or agency on their part. It was not even formed from water discharged or flowing from their premises. If from carelessness or negligence in the use or management of water, or waterpipes *in their buildings or on their premises,* the water from which the ice was formed, was suffered to escape or flow from their premises into the street and over the pavement, they would stand in a different position, because they would then have participated in causing the nuisance or obstruction. But there is no such feature in this case. Upon the facts in the record before us, the ice on which the plaintiff fell was formed solely and exclusively by the action of the elements." 40 Md. at pages 326–327.

Thus, in Flynn, the court clearly held that no liability attaches to the defendant who merely fails to remove, or take precautions against, snow and ice formed from natural causes. For liability to arise, the ice or slippery condition must be, partly at least, the product of another act, neglect or nuisance attributable to the defendant. Failing to remove ice is not actionable negligence, unless combined with such additional circumstances.

The remaining Maryland cases dealing with this problem all adhere to the distinction formulated in the Flynn case. The court, in Magaha v. Mayor, etc., of City of Hagerstown, 1902, 95 Md. 62, 70, 51 A. 832, 834, extending this distinction to a case involving the liability of a municipality, stressed: "It would, for example, be very unreasonable to require the authorities of a city, such as Hagerstown, to keep its streets, between the sidewalks, at all times free from snow and ice." There, however, the ice causing the plaintiff to fall was formed not solely from natural causes, but was the result of water from a saloon which was emptied, by means of a pipe, into the street. Because failure of the city to do something about the ice did not stand alone but was coupled with its failure to abate the nuisance causing the ice, i. e., the water emptying into the street from the saloon, the Court of Appeals permitted recovery. The distinction put forth in the Flynn case was again discussed and reaffirmed.[5] The Court of Appeals stated, 95 Md. at pages 72–73, 51 A. at page 835:

"In order that we may not be misunderstood, we desire to emphasize the fact, at the risk of repetition, that we do not mean to say that the appellee would be liable if this ice was simply the result of snow or rain, or both, falling and then freezing. If it had been, and

court, however, was of the opinion that liability could not be predicated on this ordinance alone as it was in Marriott's case. The ordinance in Flynn was construed as merely making private individuals the agents of the city for purposes of removing snow and ice. If, under the ordinance, a private individual neglected to remove snow and ice, then the city was to remove it and could charge the adjoining landowner a fee for this. Hence, the court was of the view that ultimate statutory responsibility for removing snow and ice was on the municipality, and tort liability based solely on the ordinances fell upon the city only.

5. In the Magaha case, the court rejected another distinction recognized in several jurisdictions. This is that while there is no liability for fallen snow or ice which is still in its "natural, smooth state," if it has been pushed into mounds or ridges, it thus constitutes an obstruction or an aggravated danger giving rise to liability. For a comparatively recent case recognizing this distinction, see Smith v. District of Columbia, 1951, 89 U.S. App.D.C. 7, 189 F.2d 671, 39 A.L.R.2d 773.

if the ice thereby formed was in large quantities in the streets, it would be exacting too much to require the municipal authorities to remove it. Under such conditions persons crossing the streets would or could know the danger, and would be required to use more care than is expected of them in walking on the sidewalk, and the conclusion we have reached is based on the particular facts of this case, which show that the ice was formed in the manner we have stated, and to such an extent as to become a nuisance, which it was the duty of the appellee to abate. The distinction is to some extent pointed out in Flynn v. Canton Co., 40 Md. 312, 17 Am.Rep. 603."

Two later cases, both instituted against private individuals for injuries resulting from slipping upon ice on sidewalks, well illustrate the above distinction. In Newnam v. Moran, 1928, 154 Md. 650, 141 A. 385, liability was predicated on the fact that the ice on the walk was due to water dripping from the roof of the defendant's adjacent building which lacked the proper rain gutter. On the other hand, in Realty & Mortgage Co. v. Ulrich, 1933, 164 Md. 666, 165 A. 708, in the absence of additional circumstances contributing to the injury, other than ice and snow on the walk naturally formed because of the weather, the court denied recovery.[6]

To restate the rule of law that I understand controls the instant case, it is established that in Maryland liability does not attach to a defendant who merely permits snow or ice accumulating solely from natural causes to remain on a way under his control, and it would come as a great surprise to Maryland lawyers if the Maryland Court of Appeals should in the future predicate liability on this alone. But a defendant is liable, assuming a finding of negligence, if the ice was there partly as a result of some other condition or circumstances under his control. It remains to examine the evidence and the District Court's findings to determine, in accordance with this rule, whether they support the judgment.

Four days before the accident a heavy snow had fallen, which was scraped from the road and pushed to the sides. The highway, running east and west, sloped from north to south at the spot where the collision occurred. Several feet to the north of the road, there was a slightly depressed drainage ditch, called a "swale", designed to carry water into a field ditch. The District Court pointed out that there are no curb drains on the north side of the road within 1,500 feet of the critical point, although on the south side, curb drains are spaced 300 feet apart. Photographs, taken a few hours after the accident, showed a heavy accumulation of snow on the north bank of the road.

The District Judge found that this particular location of the road was known as a "danger spot," and that several persons, both on the day before the accident and earlier on the day of the accident, either noticed the ice at this point or felt their cars slip on it there. He also found that Government Park Police, who patrolled the highway twenty-four hours a day, and who had the duty to report snow or icy conditions, or particular danger spots, and call for either plows or sanding if conditions warranted, should have discovered the patch of ice in question.

The District Court, in its opinion, observed that the plaintiffs attributed the collection of ice in the vicinity of the accident to poor drainage, and that one of their claims was that the highway, together with its adjoining drainage and landscaping, was negligently constructed. However, after the trial had

6. See also: Mayor and City Council of Cumberland v. Turney, 1939, 177 Md. 297, 9 A.2d 561; Leonard v. Lee, 1948, 191 Md. 426, 62 A.2d 259; Gravatt v. Sansone, Court of Common Pleas of Baltimore City, Daily Record, Baltimore, January 25, 1961.

begun, the Government interposed the defense of discretionary conduct, under that exemption in the Tort Claims Act, 28 U.S.C.A. § 2680(a), as to questions relating to the construction of the road and adjacent area. Without expressly ruling on this defense, the court stated:

> "At the end of the case the court was, and after a review of all the evidence still is, of the conviction that the evidence as to original construction and present condition of the highway and its approaches was intended, and was admissible, only to indicate the probability of icing at the point in question, the consequent obligation of the Government to anticipate this probability; and as showing that the affirmative testimony as to the presence of ice on this and other occasions was not completely implausible despite the testimony of highway patrolmen who did not observe icing at this point at the time in question, or at any time when icing was not generally prevalent on the entire highway." Jennings v. United States, 178 F.Supp. 516, 521 (D.C.Md.1959).

The Government did not, apparently, object to treating the evidence as to construction in this manner, and made no point about it on appeal.

However, it is not apparent exactly how the District Court actually treated the evidence of improper drainage. After the above statement, the court observed that the plaintiffs' counsel accepted the court's position, and the court declared that it was counsel's position that liability was not being claimed for negligent construction "but upon actual knowledge or constructive notice of the icy condition, and negligent failure to warn or remove it." 178 F.Supp. 516, 521. But, as previously pointed out, I do not think that mere notice to the defendant of the presence of ice due to natural causes and "negligent" failure to remove would give rise to liability under Maryland tort law.

If the water collected at this spot because of poor drainage, or defective construction, or improper maintenance, or some other circumstance under the defendant's control, and if the ice thus formed was allowed, after actual or constructive notice, to remain without the defendant taking steps to abate the condition, there could be a basis for liability. The evidence in this case could support such a finding if this is what the District Court actually intended. On the other hand, if the District Court mean to predicate liability on the mere presence of the ice and the Government's failure to remove or sand it, regardless of how the ice was formed, and apart from any considerations of defective or unusual drainage or construction, then I believe it was in error. The evidence, which was in conflict, would also appear to support this view, under which the Government should prevail. Which of these alternative views was adopted by the court does not clearly appear. At one place in its opinion, the finding is:

> "There was adequate direct, positive, and credible testimony to prove that under these conditions the location at which the accident occurred was a 'danger spot'; that because of the very slight (about 0.5 per cent) grade east-west of the highway, and the slight slope from north to south, water from heavy rains or melting snows would tend to settle initially on the westbound track; and because of its shaded, sheltered condition, such water would freeze, or remain frozen, when the balance of the highway would be clear." 178 F.Supp. 516, 521–22.

In the above finding, the court might seem to tie the presence of ice to the peculiar construction. However, the court concluded its discussion of liability with an ultimate finding that the United States is liable because it should have known of the ice and did nothing about it, making no reference to the ice being formed because of poor drainage, defec-

tive construction, improper maintenance of the drainage system, or any other unusual conditions.[7]

Because it is not ascertainable from the District Court's opinion exactly what was the basis of its finding of liability, I think it appropriate to remand the case for more specific ultimate findings of fact. The plaintiffs in this court contend that liability was predicated on the Government's failure to remove or sand the ice which was formed at this spot because the "swale," or drainage ditch, was inadequate.[8] However, no finding of the swale's inadequacy was made, and no finding of any other specific defect as the cause of the accumulation of ice. If the court's view of the facts coincided with the plaintiff's position in this court, findings to this effect should be made. Such findings, under the principles of the Maryland cases, would support liability if the court reaches the conclusion that the defendant's conduct in this combination of circumstances was negligent.[9] On the other hand, if the court meant to rest liability on the mere presence of ice on the road, and failure to warn or remove, as the Government insists on this appeal, then judgment should be entered for the defendant. *This is true regardless of considerations of constructive notice, knowledge, or the length of time the ice remained.* Since there was extensive evidence relating to all phases of this case, it would not seem necessary to take further testimony on remand. However, this is a matter I would leave to the District Court's discretion.

7. The court stated: "From the foregoing the court finds as fact that an icy condition, at least 25 feet in length, and 6–8 feet in width, was present on the westbound lane of Suitland Parkway at the place where Stewart's auto skidded, from before midnight on January 22, 1956 until after the collision in which Stewart and Donald were involved, that past experience should have led the Government to anticipate at least the possibility of such condition; that the condition was dangerous to automobile traffic; and that the size, location and duration of the ice patch were such that the Government by the use of reasonable care in patrolling the Highway should have discovered the condition in time by the use of reasonable care to have sanded the ice or provided effective warnings thereof; but that the Government either failed to discover such condition (or, if it could be found that Moskaitis and/or Hayes did in fact become aware of the ice), failed to remedy or warn of such condition. The court rules as a matter of law that the failure of the Government to discover, or after discovery to remedy, such condition, was negligence, and was at least a proximate cause of the collision in which Stewart and Donald were involved." 178 F.Supp. 516, 525–26.

8. In their reply brief, the plaintiffs state: "The record shows that the ice was uniquely present at this portion of the road because of poor drainage. After this accident a drainage ditch was dug on this north bank, a picture of which was introduced into evidence, and the poor drainage condition was alleviated." In the recital of the facts, the court refers to the "swale," or drainage ditch, but does not again mention it, or indicate whether it is found to have played any part in the creation of the dangerous condition.

9. The Government in this court did not contend, in reply to the plaintiff's argument, that liability based on this combination, i. e., a defective condition giving rise to the ice and then failure to remove or warn of it, would fall within any of the exceptions of 28 U.S.C.A. § 2680. Moreover, even if this defense were interposed, I think it lacking in merit. Negligence of governmental employees in failing to remove or warn of ice, of which they had notice, caused by a defective condition under the Government's control, is not the type of exception contemplated by the statute or the cases construing it. See: Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; Indian Towing Co., Inc. v. United States, 1955, 350 U.S. 61, 76 S. Ct. 122, 100 L.Ed. 48; Hatahley v. United States, 1956, 351 U.S. 173, 76 S. Ct. 745, 100 L.Ed. 1065; Somerset Seafood Co. v. United States, 4 Cir., 1951, 193 F.2d 631; United States v. White, 9 Cir., 1954, 211 F.2d 79.